# Spratt *v.* Wilson, Martin & Leedy.

*Bill in Equity for Foreclosure of Mortgage; Cross-Bill for Rescission of Contract.*

1. *Contract of agent having adverse interest.*—An agent, employed to purchase land for his principal, can not also act as the agent of the vendor, nor sell lands belonging to himself or his partnership, without disclosing that fact to his principal; but a real-estate agent, engaged in the business of buying and selling lands, is presumptively the agent of the vendor in effecting a sale to a person who makes application to purchase; and the purchaser can not rescind the contract, because the agent did not disclose the fact that the land belonged to his partnership, when no inquiry was made as to the ownership, and the fact of agency between the parties, or other confidential relation, is not established by the evidence.

2. *Rescission of contract on account of incumbrance, or defective title.* When land is sold and conveyed with covenants of warranty, a court of equity will not rescind the contract at the instance of the purchaser, on account of an outstanding incumbrance, or a defect of title, when it appears that the vendor is solvent, that the incumbrance has been removed, and that the defect has been cured.

APPEAL from the Chancery Court of Jefferson.
Heard before the Hon. THOMAS COBBS.

STERRETT & CAMPBELL, for appellant, cited *Waddell v. Lanier*, 62 Ala. 350; *Kennedy v. Kennedy*, 2 Ala. 607; *Boney v. Hollingsworth*, 23 Ala. 690; *Dunne v. English*, Law Rep. Vol. 94.

[Spratt v. Wilson, Martin & Leedy.]

18, Eq. 532; 1 Lawson's Rights & Remedies, §§ 93–4; *Young v. Hughes*, 32 N. J. Eq. 384; 1 W. & T. Lead. Cas. Eq., 239; 71 Penn. St. 262; 43 Wisc. 446; 57 Penn. St. 260; *Obert v. Obert*, 12 N. J. Eq. 429; 9 Otto, 588; 1 Story's Equity, § 207; *Cullum v. Br. Bank*, 4 Ala. 35; *Juzan v. Toulmin*, 9 Ala. 662.

R. H. PEARSON, and A. W. COCHRAN, *contra*, cited 2 Amer. & Eng. Encyc. Law, 592, note; 6 U. S. Digest, N. S. 614, § 83; 10 *Ib.* 623, § 9; 9 *Ib.* 610, § 77; 2 Pom. Equity, § 959; 1 Myers' Fed. Dec. 202; *Watts v. Burnett*, 56 Ala. 340; *Lehman v. Lewis*, 62 Ala. 129; *Dawson v. Burrus*, 73 Ala. 114.

WALKER, J.—On March 22, 1887, Miss Louise Spratt purchased a lot in the city of Birmingham from Wilson, Martin & Leedy, at the price of seventeen hundred dollars. She paid eleven hundred dollars of the purchase-money in cash, and executed her promissory note to the vendors for the balance. This note was made payable on the 23d day of February, 1888, and was secured by the purchaser's mortgage on the lot. The original bill in this case was filed January 15, 1889, for the foreclosure of that mortgage, no payment having been made on the note thereby secured. The defendant interposed a cross-bill, asking for a rescission of the contract of purchase, that the mortgage and note be delivered up and cancelled, and for the repayment of the principal and interest of the amount paid on the purchase. The right to rescind is claimed on the ground that Mr. Wilson, one of the complainants, while acting as the defendant's agent, and intrusted by her with full power and discretion to invest her money in real estate, abused the trust and confidence reposed in him as such agent by making a sale to the defendant of property belonging to his own firm, without informing her that they were the vendors of the property, and without fully and fairly advising her as to the facts of the transaction. The defendant claims that not until after the filing of the bill in this case did she learn that complainants had sold her their own property.

It is very plain that an agent should not put himself in such a position that his own personal interests conflict with the duty he owes to his principal, and that if he is an agent to buy, and uses his position to purchase his own property for his principal, the principal can avoid the purchase, unless it was made with his full knowledge and consent.—*Adams v. Sayre*, 70 Ala. 318; s. c., 76 Ala. 509; *Potter's Appeal*, 7 Am. St. Rep., 272–279; 1 Lawson's Rights, Remedies and

20

[Spratt v. Wilson, Martin & Leedy.]

Practice, § 93 ; 1 Am. & Eng. Encyc. of Law, 372, 375. And when a vendor occupies a relation of trust and confidence towards his vendee, transactions between them will be narrowly watched, and the vendor must show that the vendee was fully informed of the facts, and that the sale was in every respect just, fair and equitable.— *Waddell v. Lanier*, 62 Ala. 347 ; *Boney v. Hollingsworth*, 23 Ala. 698 ; 1 Amer. & Eng. Encyc. of Law, 376–377.

The difficulty in this case is in arriving at a satisfactory conclusion as to what relation existed between the parties at the date of the sale in question. The evidence on this subject is in irreconcilable conflict. The burden is upon Miss Spratt to sustain her allegation that Wilson was her agent to make the purchase for her. That fact must be established as the foundation of her claim. It appears from the testimony of Miss Spratt and of her mother, that the former was a young woman without business experience, and with few friends in Birmingham, where she was earning a livelihood by teaching music and doing occasional work for newspapers; that she gave music lessons to two of Mr. Wilson's children, was kindly treated by himself and his wife, and frequently visited their residence on terms of intimate friendship; that during the "boom" in Birmingham she heard much of Mr. Wilson's success as a real-estate agent, and he frequently talked in her presence of the large amounts of money made by his customers, and urged her to invest in Birmingham real estate and "let him make her rich;" that she had no money to invest, but finally yielding to Wilson's pursuasion, she induced her mother to borrow money and let her have it for investment in Birmingham. · In this way Miss Spratt acquired $980. She and Mr. Wilson are the only witnesses as to what occurred between them in making the investment. It is undisputed that Miss Spratt deposited with Wilson, Martin & Leedy $200 on February 25, 1887, and $778 on March 5, 1887 ; that on March 14, 1887, Wilson, Martin & Leedy made a sale to her, for one of their customers, of a lot at the price of $2,250, $1,250 of which was paid in cash, the firm advancing the difference between Miss Spratt's deposit and the cash payment; that within a few days thereafter they sold this lot for Miss Spratt at a profit of $250, and she then made the purchase which is the matter of controversy in this suit. Wilson, Martin & Leedy charged and collected commissions on the sale made for Miss Spratt. No commissions were charged on either of the purchases made by her. They admit that they acted as her agent in the sale made by her; but deny that they were her agents in either of her purchases. Miss

Spratt testifies, in effect, that Mr. Wilson was her agent throughout, that she acted entirely on his advice, and followed implicitly his suggestions and instructions. Mr. Wilson, on the other hand, states that in making the sales to Miss Spratt he met her as he met all other persons wanting to invest, told her what he had for sale, and offered her various properties from which she made her own selections. Miss Spratt says that she does not remember that Wilson submitted more than one lot for her to choose from, but that if he did so she took the one he advised her to take. In considering this conflict of testimony, the circumstance is not to be lost sight of that Wilson was engaged in business as a real-estate agent, and that this fact was fully known to Miss Spratt. An intending purchaser may apply to a real-estate agent either to learn what he has for sale, with a view of buying from what may be offered, or to enlist his services to negotiate for the purchase of property that may be desired. If the real-estate agent is resorted to for the first mentioned purpose, plainly he is to be treated as the representative of the seller, and not of the purchaser. When the question arises as to whether the agent who brought about a sale acted for the purchaser or for the seller, it is material to inquire whether the circumstances indicate that the understanding of the purchaser was that he was getting property which was in the agent's hands for sale, or that the agent acted in the matter solely in his behalf, and was not interested in serving the seller.

In the present case, there is nothing to indicate that Miss Spratt understood that Wilson was not to sell her property which he had for sale. When questioned on the subject, she does not pretend to say that Wilson, Martin & Leedy were not to sell her property on their books, or under their control, or that it was her understanding that they were to go into the market and get property for her from some other agent or seller. She says that she had no understanding on the subject with them, but that Mr. Wilson was to do the best he could for her in every respect, uninstructed by her. There is nothing to indicate that it would have been contrary to her expectation to purchase real estate which Wilson's firm had in charge for sale. Nor is there anything to show that Wilson was led to understand that he was not to offer her such property. Unless something is done to deceive the purchaser into the belief that the person he dealt with in making the purchase is acting alone in his interest, we think that one who offers property for sale may fairly assume that the purchaser understands that he is interested, either as the paid representative of the seller, or as the owner of the property. It

fairly appears in this case that Miss Spratt went to Wilson as a person having real estate for sale. It does not seem to have been her understanding that any one besides his firm represented the seller. There was no concealment of the fact that that firm had for sale the lot which she bought. Whether she understood that it belonged to the firm or to some one for whom they were acting, the fact that they were openly acting for the seller, whoever that might be, was sufficient to deprive her of the right to rely upon them as her agents in the matter. A purchaser is not entitled to treat as his agent one who openly holds himself out as the representative of the seller.—*Commercial Fire Ins. Co. v. Allen*, 80 Ala. 571.

We are satisfied from the evidence that Miss Spratt had confidence in Wilson's integrity, in his experienced judgment as to real estate, and in his professions of friendly interest; that she thought he would not urge her to make a disadvantageous purchase, and that it would be wise for her to buy property recommended by him. We are further satisfied that it would have been much better for her if she had never given heed to his glowing account of the "boom," and of fortunes easily made on small investments. But we can not overlook the fact that the evidence strongly indicates that she understood that Wilson had the lot in question for sale. Whether she supposed that he was acting for himself or for an undisclosed owner, in neither event had she the right to rely upon him as her agent. The fact that confidence was reposed in the seller's fairness and honesty, especially in dealing with an intimate friend, can not convert the seller into the purchaser's agent, or confer upon the purchaser the right to avoid the sale because the supposed friendly and well-wishing seller has not made as full a disclosure, or acted as entirely in the interest of the purchaser, as an agent is required to act for his principal. It does not plainly appear that Wilson acted in the matter as her agent rather than as a friendly seller, or that he or his firm understood that she looked to them as her agents, or expected them not to act for the seller of the property. The impression made by all the evidence taken together is, that the real transaction was that a shrewd seller got the best of it in a trade with an unwary purchaser, rather than that an agent to purchase bought from himself without the knowledge of his principal. In the circumstances as disclosed by the evidence, and in view of the conflicting statements as to the relations between the parties, we are unable to reach the conclusion that the fact of agency has been satisfactorily proved.

The fact that Wilson, Martin & Leedy advanced part of the purchase-money on Miss Spratt's first purchase, may be ex-

[Hughes v. Southern Warehouse Co.]

plained by the consideration that they were interested in
earning commissions on that sale, and in getting a chance to
earn commissions from her by negotiating another sale at an
advanced price. This fact does not necessarily tend to show
that they regarded themselves as her agents throughout.
Their payment of taxes on the lot involved in this suit may
have been for their protection as mortgagees, or because they
were interested as agents to sell the property if an oppor-
tunity offered. The property was bought to be sold again.
Miss Spratt purchased for speculation, as Wilson's firm well
knew.

The right to have a rescission is claimed principally upon
the ground that Wilson, being the agent to purchase, bought
from his own firm without informing his principal that he was
thus interested in the sale. Relief can not be granted upon
that ground, as the fact of agency has not been satisfactorily
shown. It is also suggested, though not much urged, that a
rescission would be justified because of the failure to inform
the purchaser of the unpaid mortgage on the property, and
because of the neglect to perfect the legal title by having the
wives of the two married grantors join in their conveyance.
The mortgage debt has been paid, and the outstanding legal
claims to dower have been duly relinquished. In these cir-
cumstances, and in view of the unimpeached solvency of the
grantors in the warranty deed to Miss Spratt, the defects
mentioned do not warrant an application to a court of equity
for a rescission of the contract of sale.—*Parker v. Parker*,
93 Ala. 80. No error is discovered in the record.

　　Affirmed.