# Waller, Admr., *et al* v. Jones *et al.*

*Bill in Equity to Enforce Constructive trust.*

|107  331|
|128  609|

1.  *An agent can not acquire antagonistic rights against principal in the subject matter of the agency.*—Whenever one person is placed in such relation to another, by the act or consent of that other. or the act of a third person, or of the law, that he becomes interested for

[Waller, Admr., *et al.* v. Jones *et al.*]

him, or with him, in any subject of property or business, he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interest he has become associated—(Following Scottish Union & Nat'l. Ins. Co. v. Dangaix, 103 Ala. 388.)

2. *Same; case at bar.*—One redeeming another's property from a tax sale, with means furnished by himself, under an agreement by that other to repay when able, will be considered a trustee for that other, and the fact that certificates of transfer are taken in his own name will be treated as having been done merely to secure reimbursement.

3. *Bill to enforce constructive trust—evidence.*—At the hearing of a bill for the enforcement of a trust alleged to have arisen from a purchase of certain tax certificates by defendant, it appeared for complainant that defendant, her son-in-law, who had been living with her, in the property upon which the taxes were assessed, for some years, at times paying board for himself and family, and furnishing other financial assistance to complainant, without claiming any right to compensation, had, at her request, paid the tax in question, upon her promise to repay when she was able; that, though respondent had taken the certificates in his own name, complainant knew nothing of it, nor of their subsequent transfer to her other children. The evidence for respondent was in denial of the contention that complainant had agreed to repay him, but, rather, that to secure himself for that indebtedness, and for numerous other sums advanced, he had taken the tax certificates, had subsequently assigned them, and had had deeds issued to his assignees. The property was worth many times the amount of the tax, had been the family home for a number of years, and defendant failed to secure deeds thereto for eight years after he became, according to his contention, entitled to them. It was shown, also, that defendant not only knew of a mortgage afterwards placed upon the property by complainant, but that he paid the same, and took an assignment thereof to himself. Complainant alleged a willingness to repay the amount advanced for taxes, with interest. Upon the case thus made it was error to dismiss the bill.

4. *Statute of limitations—Code § 606, not applicable to bill to enforce constructive trust.*—Code, § 606, limiting the time within which "an action for the recovery of real estate sold for the payment of taxes" may be brought, has no application to a bill for the enforcement of an implied trust resulting from the purchase, by an agent, for his principal, with the agent's funds, of tax certificates on the principals property, nor is such a bill barred which is filed within ten years from the purchase of the tax titles and from the repudiation of the trust relation.

5. *Offer to do equity.*—The maxim "he who seeks equity must do equity" does not compel a complainant to make restitution where the relief sought by him, and the right demanded by the defendant, grow out of two entirely separate and distinct matters.

6. *Same; case at bar*—In decreeing the enforcement of an implied

[Waller, Admr., *et al.* v. Jones *et al.*]

trust raised by the purchase, for his principal, by an agent, in his own name and with his funds of tax certificates on the principal's property, the principal will not be required, in addition to repaying the amount of the tax, with interest, to pay other claims against him held by his agent, in nowise incumbrances upon the property involved, nor will he be required to pay a mortgage upon the property, of which the agent has become assignee, and which is overdue.

7. *Accounting between cestui que trust and trustee in invitum.*—Where the agent has purchased for his principal, but with his own funds, tax certificates upon the principal's property, taking them in his own name, and has afterwards had the deeds therefor issued to himself, subsequently conveying the property, such instrument of conveyance will operate as an assignment to his grantees of his claim to be reimbursed for the amount expended in payment of the taxes, upon the enforcement of the implied trust, and such grantees will be entitled to be reimbursed for that amount, with interest, accounting, in return to the principal for the rents and profits of the property while they or their grantor have had possession.

8. *Absence of tender as affecting apportionment of costs.*—No tender of the amount due the trustee having been made before the bill for the enforcement of an implied trust was filed, costs will be equally divided between complainant and defendant upon the rendition of a decree in favor of the former.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JERE N. WILLIAMS.

The facts of the case are sufficiently stated in the opinion.

JOHN G. WINTER for the appellants, discussed the facts and, also, the following propositions—In transactions between persons occupying relations suggesting confidence reposed, the one who is in the position to exercise influence, and who claims the benefit thereof, takes upon himself the burden of affirmatively showing not only his version of the transaction, but, that influence was not unduly exerted: and that the transaction is fair and just.—*Kyle v. Perdue,* 95 Ala. 579 ; *Little v. Knox,* 96 Ala. 179 ; 3 Brick. Dig. 794 § 168 ; *Holt v. Agnew,* 67 Ala. 360 ; *Malone v. Kelly,* 54 Ala, 532 ; *Adams v. Sayre,* 70 Ala. 318 ; *Spratt v. Wilson,* 94 Ala. 608. Mere inadequacy of consideration, ordinarily, is not sufficient to set aside or annull a contract ; yet the inadequacy may be so gross as to furnish the strongest presumption of fraud ; and where this is coupled with fiduciary relations, furnishes conclusive evidence of fraud. "In such case,

[*Waller, Admr., et al.* v. *Jones et al.*]

inadquacy of consideration is not the ground of inter-
position, but the fraud, which follows as a conclusion
from the degree of grossness, whereby the conviction
arises and abides, though there be no direct evidence
that the contract is obtained by imposition or, by some
improper means * * * * when gross inadequacy, though not
sufficiently gross to be the basis of an inference of fraud,
is combined with incidental circumstances showing bad
faith or undue advantage; when it is coupled with weak-
ness of mind, produced by any cause, with pecuniary
distress, or suspicion of fraud; the courts will withhold
the benefits of the contract from the offending party,
whether claimed affirmatively or defensively.—*Cleere v.
Cleere*, 82 Ala. 581; *White v. Smith*, 51 Ala. 405; *Lester v.
Mahan*, 25 Ala. 445; *Thompson v. Lee*, 31 Ala. 292. "If
confidence is reposed, it must be faithfully acted upon,
and preserved from any intermixture of imposition. If
influence is acquired, it must be kept free from taint of
selfish interest, and overreaching bargains."—*Thompson
v. Lee*, 31 Ala. *supra* on p. 305. One tenant in common
cannot set up a tax title against the title of his co-tenant;
and this is so, though neither are under obligations to
pay taxes; as for instance, tenants in common in re-
mainder.—*Johns v. Johns*, 93 Ala. 239. The husband of
a tenant in common cannot acquire for himself a hostile
title.—*Rothwell v. Dewees*, 2 Black's U. S. Rep. 613. Nor
can a tenant, to defeat the title of his landlord, though
he be under no obligation to keep down the taxes.—*Bai-
ley v. Campbell*, 82 Ala. 342. Nor can a mortgagor or
mortgagee, to defeat the title of the other, even where
the mortgagee is under no such obligation.—*Grigg v.
Banks*, 59 Ala. 317; *Woodberry v. Swann*, 59 N. H. 22;
*Ragor v. Lomax*, 22 Ill. 628. And in *Sanders v. Farmer*,
62 N. H. on page 573, the court says, "land bought at
tax sale can not be held absolutely by the purchaser
against the owner, where a relation of trust and confi-
dence existing between them, renders it inequitable that
the purchaser deprive the owner of the land * * * The
defendant's father was tenant or licensee of the owner.
He and they were interested in the maintenance of their
title."—*Dufft v. Tuhan*, 28 Kan. 293; 2nd Vol. Desty on
Tax. §27; *Blackwood v. Flick*, 30 Mich. 121. None of
the above cited cases are as strong in their facts as the

case at bar; for we here find all of the elements combined.

CHARLES P. JONES and EDWIN F. JONES for the appellees. The general rule that a trustee cannot acquire any advantage by any trade in relation to the trust property, is not denied, but in all cases in which relief is claimed on this ground, it is incumbent on the party asking it, to show the true relationship as a *condition precedent.* The authorities cited by appellant when examined show a state of facts totally at variance with the case at bar.

The case of *Spratt v. Martin*, 94 Ala. 608, cited by appellant asserts the proposition in plain terms that is here contended for by the appellee. The court concludes that relief cannot be granted on the ground of betrayed agency and confidential relations as the fact of agency has not been satisfactorily shown. Here, as in the case at bar, the bill alleged implicit trust and confidence, and set up a breach of the faith reposed and a betrayal of the agency accepted. The testimony, as in the present case, was in direct conflict, the one avowing the agency and the other denying it. ·There, as in this case, the bill claimed that the woman trusted and the man abused the confidence. That case also rested on the testimony of the complainant and her mother, on the one side, and of Wilson on the other. Apply the doctrine there asserted to this case and the complainant has failed to establish the fundamental fact on which her claim of relief must rest.

The case asserts the correct doctrine and is abundantly supported by authorities. In none of the cases cited by the appellant was there any dispute as to the relation which called for the application of the principles asserted by the court, and in most of them these relations arose out of written instruments to which all were parties. In others the title was held in common and the party purchasing owed a duty to pay the taxes, by the payment of which he sought to devest the title of his joint tenant. In none of them is it held that without duty to pay taxes, and without any contractual relation between the parties, that a sale was to be set aside or the purchaser deprived of the fruits of his purchase. The undisputed evidence in this case shows that Jones and his co-defendants were strangers to the title, owed no duty to

pay the taxes and were parties to no contract which could create any status which could forbid the purchase by them of the property at tax sale, and under this state of facts the plaintiff must prove the *agreement to redeem* and failing in this must lose her case.

The lands were sold for taxes by the decree of the Probate Court on the 21st day of August, 1882, and the purchaser became entitled to a deed two years and six months from that date, to-wit, on the 21st day of February, 1885. These lands were sold by a decree of a court of competent jurisdiction, in a proceeding of which Mrs. Gilmer had due notice and to which she was a party. Section 606 of the Code provides that no action for the recovery of property sold for taxes shall lie unless brought within three years from the date when the purchaser became entitled to demand a deed therefor. Mrs. Gilmer was then barred from any suit to recover possession of the property embraced in the bill on the 21st day of February, 1888. She seeks to avoid the bar of this statute by asserting the fraud of Jones, and yet her bill and the testimony of herself, both show that she was fully aware of all the fraud she alleged, on the 22d day of April, 1890, while her bill is not filed until the 11th day of January, 1892, more than twenty months after she became fully cognizant of all of Jones' acts and his claims. This case then is squarely within the influence of Code, § 2630. The complainant neither alleges nor proves any fact as an excuse for failing to file her bill within one year from the time when she was fully informed of all the facts which her bill denounces as a fraud.—*Gordon v. Ross,* 63 Ala. 363. As to Jones' right to purchase, see *Branson v. Yancey,* 1 Dev. Eq. 77; *Jackson v. Rowland,* 6 Wend. 670; *Bettson v. Budd,* 17 Ark. 546; *Ferguson v. Etter,* 21 Ark. 160; *Watterson v. DeVoe,* 18 Kan. 223; *Seavor v. Cobb,* 98 Ill. 203; *Link v. Dowfer,* 42 Wis. 394; *Stubblefield v. Borders,* 92 Ill. 286; *Buckley v. Toggart,* 62 Ind. 239. As to proof of agreement to redeem: *Spratt v. Wilson,* 94 Ala. 608; *Gorce v. Clements,* 94 Ala. 337; *Badger v. Badger,* 2 Wall. 87. As to statute of limitations: *Gordon v. Ross;* 63 Ala. 363; *Porter v. Smith,* 65 Ala. 169; *James v. James,* 55 Ala. 525; *Badger v. Badger,* 2 Wall. 87; *Goree v. Clements,* 94 Ala. 337.

[Waller, Admr., et al. v. Jones et al.]

HEAD, J.—The bill was filed on the 11th day of January, 1892, by Susan M. Gilmer against A. Campbell Jones, Susan W. Jones, his wife, Eleanor E. Gilmer, Rebecca C. Gilmer, and Annie E. Pentecost, the last four named being daughters of the complainant.

The bill in substance alleges (1), that the complainant is the owner and is seized in fee of a certain parcel of land in the city of Montgomery which she acquired by deed executed to her on the 24th day of February, 1875; (2), that she has been in possession of the property since that date, the same being of the value of more than eight thousand dollars; (3), that on the 8th day of May, 1882, the property was sold for city taxes, and purchased by one Marlin for $164.19, the city council of Montgomery making him a deed the same day, and on the 21st day of August, 1882, the property was sold for state and county taxes, Marlin likewise becoming the purchaser for the sum of $39.05, and receiving a certificate of sale; (4), that afterwards, on the 13th day of September, 1882, Marlin transferred said certificate received from the probate judge, and also all his right, title and interest, under the tax deed from the city council, to the defendant, A. Campbell Jones; (5), that on April 22d, 1890, the probate judge of Montgomery county conveyed the property to Jones as the holder of the certificate, and (6), that on June 17th, 1890, the latter, upon the recited consideration of love and affection, executed a deed to his wife and her said three sisters by which he conveyed the property to them, his co-defendants herein.

The substance of the allegations upon which she rests the equity of the bill may be thus stated: That a few days before said Jones became the transferee of the tax titles, he reminded complainant, that as the time was passing, the property ought to be redeemed, whereupon she informed him of her inability to do so, owing to her impecunious condition; that he then offered to advance the money to her, if she would agree to pay him when able; and that she then authorized him to act for her in the redemption of the property. As explanatory of the relationship which existed between them at the time, she alleges that she frequently and constantly advised with Jones about her business affairs; that she had often procured him to act for her in such matters, and

that she and the said Jones, as well as his co-defendants, were then occupying said property as a home, in the manner usual in such cases of close family relationship. The bill also alleges, as showing the attitude of the parties, after the transfer to Jones of the tax titles, that the complainant and the defendants continued to reside together in the dwelling situated on the lot, the daughters and Jones, in part consideration of the enjoyment of the property, furnishing her a home, supplying the table and paying the taxes, without any claim of title on their part, and she supposing, up to April 22d, 1890, he had redeemed the property in her name, when Jones, after procuring the deed from the probate judge, claimed to own the property; and that subsequently, his co-defendants, after receiving from him the deed of June 17th, 1890, claimed and asserted exclusive title in themselves, by virtue of the conveyances hereinabove recited, there having been up to the filing of the bill no change in the possession, and the only change in the relation of the parties being the said claim of ownership.

Complainant also alleges that the defendants owe her a much larger sum than the amount of $205.84 paid for the taxes, on account of the use of the property, after deducting a reasonable amount for the food supplied her, as also the various amounts paid for taxes; but she says she is willing, if mistaken in this, to pay any balance that may be found due to the defendants on an accounting, for the purpose of doing complete equity, and she submits herself to the jurisdiction of the court, in all things pertaining thereto. The purpose of the bill is to secure a decree declaring that by virtue of the alleged fiduciary relationship existing between the complainant and Jones, his purchase of the tax titles shall enure to her benefit, and that upon reimbursing him, she be allowed to redeem the property, and have a cancellation of the several deeds, hereinabove recited, as clouds on her title.

The defendants filed a joint answer, and, as far as necessary to be stated, present their claims and defense as follows: Admitting the tax sales, and purchases, the transfers and deed to Jones, and the making of the conveyance by him to his co-defendants; also admitting that Jones did tell the complainant the property had been sold for taxes and should be redeemed, and that

she replied her inability to do so, they deny that he offered to advance the money to redeem, or that she authorized him to act for her, or that he in fact did or pretended to act for her in said matter. They admit the relationship and attitude of the parties, at that time as alleged in the bill, but deny they have been so living since. On the contrary, they allege that shortly after the fall of 1882, to-wit, "about October, 1883," the defendant was permitted by complainant to take possession of the property, to keep house therein, furnish supplies, take boarders and repair the house, she living there with Jones and wife who "gave her a home from their natural love and affection," since which time they allege, he has been in uninterrupted possession, claiming to own the property from the date of the purchase of the certificates, until he conveyed to his co-defendants; since which last date all of the defendants have been in the open and undisputed possession of said property.

They set up also, that about March, 1884, the complainant abandoned the property and left the State, and that since the purchase by Jones of the certificates, she has made no claim to the property.

They deny any agreement to furnish the table and pay the taxes in consideration of the use of the property, but say they furnished complainant with a home and the necessaries and comforts of life without charge, and solely on account of the love and affection they have for their mother, who has never, they allege, since October, 1883, provided in any way for the family or contributed to the expenses or asserted any right of control over the property.

They also allege, as meeting the allegations of the bill in respect of indebtedness to the complainant, on their part, that, from 1873 to 1880, Jones paid taxes on the property for her accommodation, which she has never repaid, amounting to about $526, and that about April, 1883, complainant executed a mortgage on the premises to one Wade for $210, which she did not pay, and which mortgage said Jones, to prevent a sale and save a home for his co-defendants, purchased, and of which he took a transfer. They also allege, on the same line, that Jones "at various times between the year 1873 and the year 1880, paid, at the request of complainant, various sums of money, amounting in the aggregate

[Waller, Admr., *et al.* v. Jones *et al.*]

about three thousand dollars."

In referring to the purchase by Jones of the tax certificates in his own name, the defendants allege, "that in the year 1880 respondent, Jones, not having been reimbursed for any of the sums paid for complainant, and complainant having failed to secure him for what he had already paid out, or for the amount necessary to be paid out for the taxes of 1881, declined to make any further payment for or on account of the complainant, and ceased from that time to act for complainant; and that after said property had been sold for taxes, said A. Campbell Jones, with his own funds purchased said certificates in his own name, and took a transfer thereof, to himself." The answer contains the following as giving the motive which inspired him in making the conveyance to his co-defendants : "That such deed was executed and delivered in pursuance of the purpose of said A. Campbell Jones in securing them a home, the complainant being indebted to the said Rebecca C. Gilmer, Eleanor E. Gilmer and Annie C. Pentecost in the sum of one thousand dollars, which said sum, with the interest thereon, has been due and unpaid for more than ten years ;" and the following, in the same connection : "And respondents aver that the said Jones, in executing said conveyance, was prompted by the desire of securing a home for them ; that the said Eleanor E. Gilmer and Rebecca C. Gilmer are both unmarried women, and have, by reason of the ownership of said property, been able to earn a living for themselves by taking boarders."

We have stated the case as made by the pleadings with a view to clearly showing the nature of the cause, and the issues between the parties, as preliminary to a discussion of the evidence and the principles of law involved in this family dispute over the ownership of the home in which the parties had dwelt for many years, and in which they resided together, not only when the bill was filed, but up to the time of the mother's death in March, 1893.

We will add that the defendants filed an amendment to their answer setting up by way of plea, "that the matters and wrongs complained of happened more than six years prior to the filing of the bill of complaint," and further, "that the complainant knew of the alleged fraud and wrong in her said bill complained of, more

[Waller, Admr., *et al.* v. Jones *et al.*]

than a year prior to the filing thereof."

Complainant having died, *pendente lite*, the suit was revived in the names of her administrator and five children, other than those who were defendants.

The chancellor, on final hearing, dismissed the bill without assigning reasons, and the appeal, by the complainants, brings the case here for review.

1. The allegations of the bill to which we have adverted show, beyond doubt, that its main and essential equity is based upon the familiar principle of law often recognized in our decisions, which declares that the relation between principal and agent is of a fiduciary character, and which disables the agent, during the existence of the agency, from placing himself in a position adverse to that of his principal. In a recent case we quoted with approval the following, as a comprehensive and concise statement of the rule: "Whenever one person is placed in such relation to another, by the act or consent of that other, or the act of a third person, or of the law, that he becomes interested for him, or interested with him in any subject of property or business, he is prohibited from acquiring rights in that subject, antagonistic to the person with whose interest he has become associated."—*Scottish Union & National Ins. Co. v. Dangaix*, 103 Ala. 388. To this we may add the following citations:

*Spratt v. Wilson*, 94 Ala. 608; *Adams v. Sayre*, 76 Ala. 509, S. C. 70 Ala. 318; *Pearce v. Gamble*, 72 Ala. 341; *Firestone v. Firestone*, 49 Ala. 128; *Walker v. Palmer*, 24 Ala. 358; *McKinley v. Irvine*, 13 Ala. 681.

If, therefore, Jones was authorized by, and agreed with, the complainant to redeem her property from the tax sales, or to purchase for her benefit the outstanding tax titles with means to be furnished by him, upon promise by her to repay him when able, as alleged in the bill, then, under the influence of the rule of law we have stated, a constructive trust for the complainant's benefit will be raised up, which a court of equity will declare and enforce, and the taking of the transfer in his own name will be treated as having been done for the mere purpose of securing to him reimbursement for the amount advanced.—*O'Bear Jewelry Co. v. Volfer*, 17 So. Rep. 525; 1 Perry on Trusts, § 206, 2 Penn. Eq. § § 1044–1050; *Collins v. Rainey*, 42 Ark. 531; *Boswell*

v. *Cunningham*, 32 Fla. 277; *Rose v. Heyden*, 35 Kan. 106; *Sanford v. Jones*, 35 Cal. 481; *Kendall v. Mann*, 93 Mass. 15.

2. The equity of the bill is not and can not be denied; but the defendants earnestly insist that, as a matter of fact, the particular fiduciary relationship did not exist, and that, the burden of proof being upon her to mantain this preliminary fact, (*Spratt v. Wilson*, 94 Ala. 608), she has failed to sustain, by evidence, the allegations of her bill. This will require a consideration of the answer of the defendants and of the testimony found in the record. The testimony of the complainant herself, if believed, fully sustains the bill, and would justify the relief she seeks. She also offers the testimony of one of her daughters, Mrs. Harris, who testifies to a conversation in reference to the redemption of the property by Jones, but she is indefinite and uncertain as to the time, and the cross-examination renders it probable that her testimony relates to a conversation, which occurred after the transfer to Jones. There is, therefore, direct conflict between complainant and Jones, as to the fact of agency, and this will necessitate a careful examination of the situation of the parties, the probability or improbability of their statements, their acts and conduct, with reference to each other, and the property before and after the main transaction under investigation: and in short all the circumstances developed in the case, so that we may decide where the truth of the matter lies, remembering that weighing evidence by no means consists simply in counting witnesses.

In looking at the case from the standpoint of the defendants, as disclosed in their answer alone, we do not know which of its two leading features most excite surprise—whether it be the fact that a son-in-law, who protests love and affection for his wife's mother, and who, up to that time, had contributed liberally to her assistance and support, would undertake to acquire for himself, in hostility to her, her home worth from seven to ten thousand dollars, for the paltry sum of about two hundred dollars, without telling her, as far as is shown, prior to the purchase, that he designed doing so, or making any effort to secure a loan for her on the property, which we may well suppose, in view of its value, could easily have been done; or whether it be the other

fact set up, that she, readily and without protest, upon being informed that he had purchased the property for his exclusive benefit, acquiesced in and assented to his act, which would force her into the position of a pensioner upon his bounty, and that she surrendered the property to his claim of sole ownership, without making any effort, in other quarters, to secure by loan or otherwise, the amount necessary to its redemption, and without any agreement or understanding that he should be under .any legal obligations to furnish her a home. Although Jones, by his conveyance made in 1890, nearly eight years after the event, permitted three of the daughters who resided there, to share in his purchase, it is nowhere claimed that he was under obligations, moral or legal, during this long interval, to grant them any such interest; hence, the answer of the defendants presents the further remarkable feature of those three sisters, who must have felt a sense of proprietorship in the property, also, for the period of nearly eight years, silently acquiescing in an arrangement, which would have excluded any prospective interest on their part, as the natural successors to their mother's estate. It is highly improbable that Mrs. Gilmer would have been so indifferent to the loss of her valuable property, as to have adopted the course suggested, but even if she had been willing to trust the defendant, Jones, to maintain her in comfort during her own life, we find nothing in this record to justify us in supposing that her motherly instinct would have been inattentive to the just expectations of eight of her children.    But, if from age, incapacity, impecunious condition or feebleness of temper, she should have failed to resent and resist the plan of Jones, we can hardly believe that the three grown daughters, who lived with her would have been so indifferent .to their interests as to acknowledge and approve his claim of sole ownership, particularly as their mother was indebted to them in the sum of one thousand dollars.    These are the impressions which force themselves upon the mind, upon reading the answer alone.    Let us see how the case stands in the light of the evidence.

Most of the facts to which we will refer are taken from the testimony of the defendants, and more particularly from the deposition of A. Campbell Jones himself.    Dr.

[Waller, Admr., *et al.* v. Jones *et al.*]

Gilmer died in 1873, leaving the original complainant, his widow, and nine children, both sons and daughters. The family resided at that time on the property, in dispute, which the complainant held under some agreement for which the deed of later date was substituted, as appears from its recitals. Two weeks prior to the father's, Dr. Gilmer's, death, the defendant, Jones, married into the family, and after the former event he was regarded and acted as the man of the establishment. His wife says, that from his marriage he became its main support. From 1873 to 1880, he paid the taxes for Mrs. Gilmer, in her name, upon her request, and it is by no means clear that she promised or that he expected repayment. As long as Mrs. Gilmer managed the affairs of the household, Jones paid her forty dollars, per month, for the board of his family, and at the end of the month, if she was unable to pay all the expenses, he discharged the deficit and also furnished wood and coal. These amounts, he states, were usually from twenty to twenty-five dollars per month. It does not clearly appear that he made any charges against her for these advances, and all the circumstances tend to show, that the taxes and these amounts were paid, as a prosperous son would assist a widowed mother who had no income, without any idea of holding the claim against her as a subsisting indebtedness. In 1880 or 1881, finding that the burden was more than he was able to bear, Jones proposed to Mrs. Gilmer to take a cheaper house, and rent her home to a tenant, which she concluded to do, Jones himself taking a separate house for his family. Mrs. Gilmer procured a house at ten dollars per month, and let hers at an agreed monthly rental of fifty dollars. She failed to collect the rent, and Jones states, that he had the family to support, and the rent of the house in which they lived, to pay, which increased rather than diminished his burden. Finding that his expenses were heavier than formerly, he proposed to Mrs. Gilmer to move back to her place, which she did, Jones likewise returning there and paying her board, until he and Mrs. Jones took charge of the domestic affairs. Such was the situation and relationship of the parties in 1882, when the property was advertised for sale for delinquent taxes. Jones became concerned about the matter, and went to the several male members of the family, sons and sons-

in-law, and proposed to share the expenses of the taxes. Failing in this effort, the property was sold and the purchaser, or Mr. Stoelker who controlled the tax claims, began to press for the money or possession. He was not then entitled to possession under the purchase from the probate judge, but it may be he could have obtained it under the deed from the city council. At this point, it is undisputed that Mrs. Gilmer and Jones had an interview on the subject, in which the importance and necessity of redeeming from the tax sales was discussed. He admits he told her that he would pay the taxes and redeem the property for her, if she would secure him, thus showing that security for the necessary amount was all that he desired or required. The property itself was amply sufficient to secure the amount, and if Jones had demanded or suggested a mortgage, it cannot be doubted, that it would have been given. Mrs. Gilmer testifies that he promised to make the redemption for her, and that she authorized him to do so. Her statement of the transaction is reasonable and probable, and the agreement to which she testifies is the very one, that would naturally have been made by Jones, in view of the close and confidential relationship then existing between them, particularly as he could and did procure the most adequate security—the only thing desired—by taking the transfer in his own name. The admitted subsequent unconcern of Mrs. Gilmer about the matter can be understood, only upon the hypothesis that Jones had given satisfactory assurances of his intention to protect her interests, or that she was relying upon his declaration, containing no limit as to time, which he admits he made, that she might redeem at cost to him. At that time, the period for redemption had not expired. We judicially know that the period of two years from the date of sale was allowed for that purpose, in case of the sale for city taxes (Acts of 1880–81 p. 494), and a like term in respect of the sale for the benefit of the State and county (Code of 1876, § 494.) She needed no permission nor recognition by Jones of these legal rights, at the time of his statement to her, and it can have no real significance except as an admission of the true character, in which he had made the purchase of the outstanding titles. If Jones had positively declined to advance for her, and had given her clearly to understand that reliance upon him,

[Waller, Admr., *et al.* v. Jones *et al.*]

and a failure to resort elsewhere, would result in a loss of her valuable property, for a comparatively trifling debt, unless she strictly pursued her legal right of redemption within the statutory period, we cannot believe that she could not and would not have made arrangements to remove the charge, within the time prescribed by law. There are other circumstances of strong probative force, tending to show that Jones did not purchase the tax titles, nor hold them in the beginning, in hostility to Mrs. Gilmer, He swears he bought the property to secure indebtedness due him—the expression of an ulterior design beyond that indicated in the simple act of making the purchase; and to this may be added the otherwise singular fact, that he failed for nearly eight years to obtain a deed from the probate judge, in the mean time merely holding the certificate of purchase. The defendants, say as opposed to these suggestions, that Jones took, and Mrs. Gilmer yielded, possession in recognition of his adverse claim, and they inquire how the change in the management of the household affairs can be explained, unless it be true that she recognized the transmutation of ownership from herself to him. The facts are that the purchase was made in September, 1882, and that Jones and his wife did not undertake the management of the house until ''about October, 1883.'' This delay of more than a year would tend strongly to show that there was no causal connection between the new arrangement and the purchase of the tax titles. Mrs. Gilmer says she rented the house to Mrs. Jones. This is not denied by any of the defendants, and the testimony of Jones not only confirms her statement, but fully explains the circumstance. After stating the failure, from a financial standpoint, of Mrs. Gilmer's administration, to which we have referred, Jones adds, that he proposed to her that he would take charge of the house and take boarders, which he did, his wife collecting the board, for one year, until they moved to Atlanta in 1884. Jones did not demand or obtain possession under or by virtue of his tax purchase, and the mere transfer of the control of the domestic affairs from Mrs. Gilmer to Jones and his wife, falls far short of constituting such possession in them, as could be called adverse or become uninterrupted while she lived there. When Jones removed to Atlanta in 1884,

where he remained four years, the three sisters succeeded him in the conduct of the establisment, Mrs. Gilmer continuing to reside there, in all respects as a mother would naturally do, and with all the privileges of that relation. These sisters neither paid nor agreed to pay rent to Jones. He did not expect it, nor did he pay the taxes, after his removal. We can see no difference between the control and management of Jones and wife up to the time he went to Atlanta, and that of the three sisters, after that time, and it is undisputed that the latter had not asserted any claim to the property, until after the conveyance to them in June, 1890. If it be argued that Mrs. Gilmer paid no taxes after Jones assumed charge, so also may it be said, that he paid none after he ceased to reside there.

The facts, as they appear in this record, clearly prove to our minds, that Mrs. Gilmer, owning a home that would have yielded fifty dollars per month—a sufficient sum to secure her a comfortable living—was willing for her children, as occasion might require, to share it with her and make what profit they could by keeping boarders, after paying the expenses, repairs and taxes, provided she could have a home there; and that the defendants were content with this arrangement. She made no charge for rent, and they made no charge against her for board, or expenditures on the property; nor did the parties institute comparisons, or make calculations to ascertain who derived most benefit from this method of conducting the family's domestic affairs. It is shown that there was no express agreement to this effect, but all the circumstances prove that such was the tacit understanding. It was a natural course, adopted by common consent, and it is no surprise, in view of the close and intimate relationship of the parties, that it was not made the subject of express contract and bargain. We do not find any satisfactory evidence of the assertion of a hostile claim against Mrs. Gilmer, by virtue of the tax purchases, until 1890, and she was all the while, even up to her death in 1893, in legal possession of the property. The allegations of the answer that she abandoned the place in 1884, and left the State, are not attempted to be sustained by the defendants, and they appear to rest upon no more substantial foundation than a motherly visit of three weeks duration, which Mrs. Gil-

mer made to the bedside of a sick and afflicted daughter, in the State of Florida.

There is still another fact, proven by Jones, which is inconsistent with the theory of the defense. In April, 1883, six months or more after the purchase under investigation, Mrs. Gilmer made a mortgage on the property to one Wade. It cannot be supposed that Jones was ignorant of this transaction. He and Wade were employed in the service of the same railroad company, Wade being master car builder and Jones yard master. So far as appears, the latter made no objection to the giving of the mortgage, although he now says the property then belonged to him, Mrs. Gilmer having only the statutory right of redemption. Not only did he fail to object to it, but in 1884, he paid the amount to Wade, taking a transfer to himself of the mortgage, thus preserving it as a lien on the property; and he states, when he testified, that the mortgage then belonged to him. It is also proven that when in 1891, Jones presented to Mrs. Gilmer plans of a house he proposed to build, she at once protested and declared the house should not be constructed, as the property was hers. Jones seems to have then desisted from his purpose, as we find no evidence that a new house was ever erected.

If we must seek the motive and real purpose of the subsequent assertion of absolute ownership by Jones and his grantees, it is not difficult to find. Before the transfer to his wife and her three sisters, he told Mrs. Gilmer that if she would secure him and the three daughters for indebtedness, claimed to be due them, by giving them a mortgage on the property, he would release all claims to it, thus indicating that, at that late date, after the claims of the daughters for $1,000, and his also, if he really had any, had doubtless become barred, he undertook to use the tax purchase as the means of reinstating demands, which could no longer be maintained in law. His explanation that he made the transfer to his wife, and "to the heirs" who had assisted his wife in keeping up the property, indicates the existence of the idea in their minds, that the defendants were entitled, upon some moral or equitable ground, to the enjoyment and ownership of the property, to the exclusion of the other children. The testimony of Jones strongly indicates, that the tax purchase was seized upon as the only

available means of effectuating this object, thereby per-
verting it to an end not contemplated in the beginning.

We conclude that Mrs. Gilmer is fully corroborated
by the several circumstances and considerations to
which we have referred, and that the theory advanced
by Jones and his co-defendants is not in harmony with
the various facts shown by the evidence; hence, in the
absence of any impeachment of her veracity, we accept
her testimony as true, and declare that the chancellor
erred in his finding on the facts, if his decree was based
upon a supposed deficiency of proof. In reaching this
conclusion Jones will suffer no loss, since the relief can
be granted only upon reimbursement of the amount
expended, for which under the offer to do equity, and
submission to the jurisdiction of the court, contained in
the bill, we can and will decree a lien upon the prop-
erty, thus providing ample security—the only condition
he claims to have demanded in proposing to Mrs. Gilmer
to redeem the property. We have discussed the facts
more fully than we would otherwise have done, because
of the earnest argument of counsel for appellees, in sup-
port of the decree, and because we feel constrained to a
different conclusion from that reached by the chancellor.

In view of the allegations of the bill, and of our con-
clusions upon the facts, we have not found it necessary
to consider whether Jones occupied such a relation to
the property and Mrs. Gilmer, as would, in the absence
of the agreement or understanding which existed, have
disabled him from purchasing the tax titles for his own
benefit, and upon that question we now express no
opinion.

We will notice the defense of the statute of limitations,
which is insisted upon by appellees. The contention
that this is "an action for the recovery of real estate sold
for the payment of taxes," within the true intent and
meaning of section 606 of the Code of 1886, and that
since Mrs. Gilmer discovered, more than a year before
the filing of the bill, the purchase by the defendant,
Jones, and the assertion by him of an adverse claim, in
violation of the confidence reposed, she can not invoke
the benefit of section 2630, which, "in actions seeking
relief on the ground of fraud," allows an additional year
after the discovery of the facts constituting the fraud,
where the statute has created a bar, within which to

prosecute the suit.   Waiving the inquiry whether the pleas are sufficient in their averments to the present question, we remark, that the contention proceeds upon an entire misconception of the nature and purposes of the bill, which we have declared to be a bill for the enforcement of a constructive trust, and the procurement of the auxiliary and incidental relief of redemption and cancellation.   Section 606 of the Code of 1886, as well as section 464 of the Code of 1876, for which, with only a change of the period and the time at which the limitation began to run, the former was substituted, was designed merely to prescribe a time within which the validity of a tax sale could be contested, by the owner or purchaser or their privies.—*Bolling v. Smith*, 79 Ala. 535 ; *Mills v. Clayton*, 73 Ala. 359 ;   *Pugh v. Youngblood*, 69 Ala. 296 ; *Jones v. Randle*, 68 Ala. 258.

The original complainant, by her bill, does not seek to test the validity of the tax sales of her property on account of any defect or vitiating irregularity, nor, indeed, for any reason.   By her failure to assail them, she admits their validity, and the bill proceeds entirely on that theory, although it sets up that Jones, by his failure to procure a deed and sue for the possession for eight years, had become barred of his right to recover under the sale made for the State and county taxes ; but the equity of the bill by no means rests upon this averment.   It is of no importance, in a case of this character, whether the tax sales were good or bad, and it is but an incident that the outstanding charge existed by virtue of tax sales. The result would not have been different if the incumbrance had arisen from some other cause.   Section 606 has no application to the case ; and as it is not argued that any other statute had operated a bar, it is unnecessary to consider whether this is an action  seeking relief on the ground of fraud, within section 2630.—*Scott v. Brown*, (Ala.) 17 So. Rep. 731.   The suit was brought within ten years from the purchase of the tax titles, and within a much shorter time after the repudiation of the trust relation.   It was not barred.—*Beadle v. Seat*, 102 Ala. 532 ; 15 So. Rep. 243.

The next inquiry relates to the terms we should impose, as a condition to granting relief.   The familiar maxim, that "he who seeks equity must do equity" does not compel a complainant to make restitution where the

relief sought by him, and the right demanded by the defendant, grow out of two entirely separate and distinct matters.—1 Pom. Eq., § 387. The same is true of the other maxim, "that he who comes into a court of equity must come with clean hands."—*Foster v. Winchester*, 92 Ala. 497. Therefore, the complainants will not be required to pay the claim of the daughters for $1,000, nor the demands of Jones for loans or advances, now claimed to have been made to Mrs. Gilmer. These were by no means charges or incumbrances upon the property involved, and whatever rights thereunder the parties have, must be enforced against Mrs. Gilmer's estate. The mortgage to Wade, which Jones purchased, was likewise an independent transaction, in no way connected with his fiduciary relationship of agent, and his transferees may assert thereunder, in some appropriate proceeding (if they have not already done so), whatever rights they possess, unless those who have succeeded to Mrs. Gilmer's interest pay the debt. We also but effectuate the manifest intention of the parties, as above declared, in taking no account of the rental value of the property up to Mrs. Gilmer's death, or of the reasonable cost of her board, and of the expenditures upon the property up to that time, and in allowing these items to neutralize each other.

Jones having made a conveyance of the property, the instrument will operate as a transfer to his grantees of the claim, for which the property is made security, and these grantees, defendants herein, are entitled to be reimbursed the amount expended by him in the purchase of the tax titles, with interest; and they must account for the rent that was or might have been received; or if the property has been occupied by them, a reasonable occupation rent, after Mrs. Gilmer's death. They will also be entitled to any amounts expended after that time, for taxes and necessary repairs with interest, six months rests to be made in stating the account.—*Adams v. Sayre*, 76 Ala. 509; *Dozier v. Mitchell*, 65 Ala. 511

The decree of the chancellor must be reversed and a decree here rendered for the complainants in accordance with these principles. As it will be necessary to take an account, the cause will also be remanded for that purpose, and for the complete execution of our decree.

As no tender was made to the defendants before the

suit was brought, the costs in the chancery court up to
this time, will be divided equally between the complain-
ants and defendants.—*Perdue v. Brooks*, 85 Ala. 459;
*Hudson v. Kelly*, 70 Ala. 393.

We leave the chancellor to adjudge whatever further
costs may accrue by subsequent proceedings in the chan-
cery court. The costs of the appeal will be taxed against
the appellees.

Reversed, rendered and remanded.