## WALKER vs. PALMER.

1.   Where the bill alleges a negative—that defendant, who was complainant's
agent to sell, became himself the purchaser *without* complainant's consent—
which the answer denies, and alleges the reverse affirmative to be true—that
defendant became the purchaser *with* complainant's consent—the affirmative
allegation of the answer is not responsive to the bill, but must be proved by
defendant to make out his defence.

2.   An agent to sell cannot himself become the purchaser without his princi-
pal's consent; if he is surety on his principal's notes for the purchase money,
he has the right to secure himself, and the deed, which he had taken from his
principal's vendor to himself, would give him a lien to the extent of the
money which he paid; but if he had other moneys of his principal in his
hands at the time of his purchase, his lien would be diminished to that ex-
tent.

Error to the Chancery Court of Benton.

Heard before the Hon. E. D. Townes.

This bill was filed by John B. Palmer against Joshua R.
Walker.   It alleges, substantially, that in 1842 defendant, as
administrator of the estate of John Walker, who was the father
of complainant's wife, received from her certain notes which had

been given to her as a part of her portion of her father's estate; that in 1845 complainant purchased a tract of land, situated in Benton County, from one Little, for about $350, and took from him a bond for title on the payment of the purchase money; that in December, 1845, said defendant, who resided in Benton, wrote to complainant, who then resided in Madison, requesting him to send said title bond to him (said defendant), saying that he had sold the land conditionally for $500, if complainant was willing to take that sum for it, and intimating that this was a good price; "that said bond for titles was accordingly placed in the hands of said defendant, to enable him to sell, or consummate a sale of, said tract of land for complainant; that said defendant obtained the possession of said bond for titles, and the control and management of said land, not by any purchase of either from complainant, but to enable him to effect a sale of the land, and to rent it out, and receive the rents annually until it was sold; that since complainant purchased said land, said defendant has rented it out for several years, and received the rents and profits, and has cultivated a portion of it himself; that the value of the rents and profits thus received by defendant amount to at least $350; that after said defendant thus obtained possession of said bond for titles, and the control of said land, he delivered up said title bond to said Little, without the knowledge or consent of complainant, and obtained from said Little a deed conveying the legal title to said lands to himself; that complainant never sold said title bond, nor made any transfer thereof to any person, and never authorized the execution of said deed to said defendant; that said defendant, since obtaining said deed, has instituted his action of trespass to try titles against complainant, as well as for damages by way of rent for said land, which action is pending and undetermined; that said Little has now no interest in said land, and that said defendant is asserting title thereto for himself, and in hostility to the rights of complainant." The prayer of the bill is, for an injunction of said action at law, " an account of the rents and profits, moneys and other things, which defendant has received on account of said land since the date of said bond for titles;" that, on final hearing, the legal title to said land be divested out of said defendant, and invested in complainant; and for general relief.

Walker's letter to complainant, dated December 26, 1845, is made an exhibit to the bill, and contains this extract: " I have sold your land conditionally for $500; and if you are satisfied, bring or send me the title bond, and, if the man comes, I will close the contract. The profit is something these times; there is more land to sell here. I want you to write me, as soon as you receive these lines, what you think of the sale of the land."

The defendant answered, alleging that he was surety for complainant on his notes to Little for the purchase money of the land; that he paid these notes, and took the title to himself, with the consent and approbation of the complainant; that he received rent for the land, on account of complainant, for the year 1846, but not afterwards; that he made the purchase for himself in the spring of 1847, and took Little's deed on the 25th of November, 1848; that complainant authorized him, in conversations had after the date of the letter of December, 1845, to sell as best he could, or take the land himself.

There is testimony showing that, in 1848, the land was worth from $600 to $800; that defendant rented out the land, during the years 1846, 1847 and 1848, as agent of complainant. But there is no evidence showing that defendant took the deed for the land in his own name with the consent and approbation of complainant.

The Chancellor decreed in favor of the complainant, enjoining the action at law, and directing the master to take and state an account between the parties; and this decree is now assigned for error.

WALKER & MARTIN, and JOHN FOSTER, for plaintiff in error:

As a general rule, an answer, when responsive to an allegation in the bill, must be disproved by two witnesses; and that this may require complainant to prove a negative does not relieve him from the operation of the rule.—2 Story's Eq. § 1528; 3 Ala. 478; Hogan v. Smith, 16 ib. 600; 14 ib. 370; 3 Paige 557; 1 Walker's R. (Michigan) 267. The case in 6 Ala. 618 is but an exception to the general rule, depending upon its peculiar circumstances, and has no application to the case at bar. If this rule is allowed to prevail, it must prove fatal to the complainant's case.

The statute of frauds has no application to a contract which has been executed, as in this case.—Andrews & Bro. v. Jones, 10 Ala. 421 ; Brown v. Bellows, 4 Pick. 179 ; Philbrook v. Belknap, 6 Verm. 383. Otherwise, that statute would be converted into an engine of fraud and oppression.—Brewer v. Brewer & Logan, 19 Ala. 481 ; Burt v. Henry, 10 *ib*. 874.

The land was purchased by complainant in September, 1845 ; he remained in possession but a few weeks, abandoned the land, and desired to abandon the contract, and did not return to the land until 1851. He cannot recover, because he does not bring into court, nor offer to repay to respondent, the money advanced by him : he who seeks equity, must do equity.—Story's Eq. Pl. §§ 257, 258 ; Story's Eq. Jur. § 693.

Admitting that defendant, as complainant's agent, had received the amounts due the latter for rent as charged in the bill, still he would have had no right to appropriate them to the payment of the purchase money of the land, without the consent of his principal.—Cherry v. Belcher, 5 Stew. & P. 133 ; McBroom v. Governor, 6 Porter 32 ; 1 Ala. 121 ; 1 Stew. & P. 486.

This is not the case of an agent to sell merely becoming the purchaser for his own benefit. Complainant specifically authorized and requested the defendant to pay the purchase money and take the land, and this request was not recalled until long after it had been executed. The statements of the answer upon this point are directly responsive to the bill.—Caldwell v. Gillis, 2 Porter 526. To invalidate this, would amount to a denial to the parties of the right to contract for themselves.—14 Ala. 49. The weight of proof on this subject is in favor of the truth of the answer : complainant abandoned the idea of moving to the land in the fall of 1846 ; he solicited Little to do precisely the same thing that defendant afterwards did, in reference to taking the land ; he authorized the defendant to sell the land on the same terms to any other person ; he acquiesced in the purchase by defendant from the spring of 1847 to the spring of 1851, neither demanding rent, nor making any arrangement to pay the purchase money ; all of which shows that he regarded the sale to defendant as valid and binding, and only sought to revoke it when extraneous circumstances had given an increased value to the land.

24

RICE & MORGAN, and WM. H. FORNEY, *contra :*

The admissions of Walker in his answer, and in his letter of December, 1845, and the evidence in the case, show that Walker was Palmer's agent to sell or rent the land. Aside from the fraud which vitiated Walker's purchase, and which clearly appears in the proof, the mere fact of his agency for Palmer forbade his taking the land on his own account.—Andrews & Bro. v. Jones, 10 Ala. R. 401; Same v. Same, *ib.* 461; Story on Agency, 200 to 205; 3 Munf. 232; 5 Dana 469; 5 Paige 650.

The fact that Walker was Palmer's surety on the notes given for the purchase money of the land, gives him no lien on the land.—Foster v. Atheneum, 3 Ala. 258.

The answer alleges, also, that Palmer consented that Walker should pay the purchase money, and take the title to himself; but in this respect the answer is not evidence. The allegation of the bill is negative : that Palmer did not consent that Walker should take the title to himself; while the answer alleges, affirmatively, that the arrangement was made with Palmer's consent. Such an answer does not throw the *onus probandi* on the complainant.—Carpenter v. Devon, 6 Ala. 718; Manning v. Manning, 8 Ala. 138; Dunn v. Dunn, *ib.* 784.

The testimony shows that, when Walker made the purchase for himself, and paid the purchase money, the land was worth from $600 to $800, and at that time Walker owed Palmer, for rents received, more than the sum he paid out for the land.

PHELAN, J.—The bill in this case alleges, that the title bond from Little was delivered to the defendant, Walker, as agent of the complainant, to enable him to make sale of the land; but expressly avers, that it was not transferred or sold to him; and further alleges, that the payment of the purchase money, by Walker to Little, and the making of the deed from the latter to the former, was not with the knowledge or consent of complainant.

Walker, in his answer, denies these allegations; and the answer goes on to aver, affirmatively, that the transaction was with Palmer's consent. There is no proof to this point, except what is furnished by the bill and answer ; and this raises the question, whether such an answer is responsive to the bill, and proof, of itself, requiring two witnesses, or one with corrobora-

ting circumstances, to overcome its force. The averment of the bill is the averment of a negative, viz., that the taking of the deed to himself by Walker was without the consent of Palmer. If the answer had simply denied the truth of this negation, how would the case stand? Would it be incumbent on Palmer to prove, in order to make out his case, that he did *not* consent? To prove this description of negative averment, involves a moral impossibility, and is therefore not required, no matter from which party it comes. But, if Walker defends on the ground that Palmer *did* consent, that is readily susceptible of proof, and Walker must accordingly prove it. Palmer makes an averment which he is not bound to prove; but it was material to his case, and Walker was bound either to admit or deny it; and, if he denies it, to verify that denial in the only way in which such a denial can be verified, by proving directly and positively the existence of a fact or facts incompatible with its claim to truth. All this Walker cannot get over by simply averring, as if in response, that which he is bound on his part to prove, namely, that Palmer *did* consent. This was strictly a part of his defence—matter in avoidance, which he must prove. 2 Story's Eq. § 1529; 2 Phil. Ev. (C. & H.) 483 *et seq.*; 1 Stark. Ev. 377; 6 Ala. 718; 8 *ib.* 138 and 784.

The proof in the case, throwing out this affirmative allegation of the answer, goes clearly to show that Walker was only an agent for Palmer to make sale of this land; and the question now recurs, Could he take a valid deed to himself from Little, as against his principal, Palmer, under the circumstances of the case? An agent to make sale of property can no more sell such property to himself, than a man can sell his own property to himself; for, in respect to such property, the agent stands in the place of the principal: he can only buy, then, by contract with his principal.—Story on Agency, 210 *et seq.*

The proof here does not show, nor conduce to show, a contract between Palmer and Walker for the sale of this land. Walker's letter of December, 1845, says, in substance: " I have sold your land conditionally to another person, for $500; if you are satisfied with the price, send or bring me your title bond from Little," &c. The bond is sent pursuant to this request. This was no sale of the bond to Palmer, nor did it authorize him to take the land at the price named. Even if he had paid the

purchase money, and procured a deed to be made to himself in some short time after the date of his letter and the receipt of the bond, such a proceeding would have been without authority from Palmer, and would have conferred no valid title as against him; because Walker was made an agent to sell to another, and could not therefore buy himself.—Story, *supra*.

But the proof shows, that Walker rented out the land in 1846 and 1847, as the agent of Palmer, and in 1848 he takes a deed to himself from Little, without further correspondence with Palmer, so far as we are informed. By this time, too, the land had appreciated and was worth from $600 to $800. If he had sold the land to another in 1848, at the price of $500, he would have been guilty of fraud or negligence towards his principal, even if his sale had been valid as respects the purchaser; but, as between himself and his principal, the transaction cannot be supported, and he will be held to be a trustee of the legal title for the benefit of his principal.

The payment by Walker of the purchase money due to Little, on the ground that he was bound as a surety on the notes of Palmer, would give him no other right than to secure himself.— The deed, which he took in his own name, would give him a *lien* to the extent of the money he paid, and if he had moneys of his principal in hand at the time, derived from rent or any other source, his *lien* would be diminished to the extent of the money so held.

The decree below is in accordance with these views, and is affirmed; and the cause will be remanded, that it may go to the master to take and state an account.