THE ALERT BUILDING AND LOAN ASSOCIATION OF THE CITY OF NEWARK, A CORPORATION, PLAINTIFF-RESPONDENT, v. WILLIAM S. BECHTOLD ET AL., DEFENDANTS-APPELLANTS.

Argued February 2, 1938—Decided April 29, 1938.

For the defendants-appellants, *Lionel P. Kristeller* and *Saul J. Zucker.*

For the plaintiff-respondent, *Samuel Roessler.*

The opinion of the court was delivered by

BODINE, J. The defendants appeal from a determination in the Circuit Court that chapter 88, *Pamph. L.* 1935, *p.* 260 (*Rev. Stat.,* 2:65-5.1), was unconstitutional. The statute in question was enacted after the decision of this court in *Vanderbilt* v. *Brunton Piano Co.,* 111 *N. J. L.* 596. The statute provides that in a suit upon a bond for a deficiency, after foreclosure, the defendant may file an answer disputing the amount of the deficiency, in which event both the parties may introduce in evidence during the trial testimony of the fair market value of the mortgaged premises and the court, with or without a jury, may determine the amount of the deficiency by deducting from the debt the amount found to be the fair market value of the premises sold under foreclosure. Mr. Justice Case, in writing the opinion of this court in *Vanderbilt* v. *Brunton Piano Co., supra,* clearly indicated that determining the fair market value at law, in order to reduce the amount of the deficiency, impaired the obligation of contracts existing at the time of the enactment of the

statute, since the obligee on the bond had prior to the enactment of the statute, as an indicate of his contract, the right to recover and liquidate the same, first by receiving the proceeds from the pledged property and, supplementarily by a personal action for the deficiency, the statute providing an opportunity for the debtor to reduce the sum recoverable on the bond impaired the contract.

Article 4, section 7, paragraph 3 of the state constitution provides: "The legislature shall not pass any * * * law impairing the obligation of contracts, or depriving a party of any remedy for enforcing a contract which existed when the contract was made." It is to be noted that it is not only that the legislature may not pass a law impairing the obligation of the contract, but they may not deprive a party of any remedy for the enforcement thereof which existed when the contract was made.

The Supreme Court of the United States in *Richmond Mortgage and Loan Corp.* v. *Wachovia Bank and Trust Co.*, 300 *U. S.* 124, merely determined that a North Carolina statute providing for the determination of fair value did not offend article 1, section 10 of the federal constitution, which forbids the states from passing laws impairing the obligation of contracts.

"Although the statute in question purports to postpone the right to sue for the deficiency during a period of years, or during an emergency, it does not in effect do so because it requires the action to be brought within three months after the confirmation of the sale and then provides not for the recovery of the amount of the deficiency after sale, but for the recovery of the amount of the deficiency as found in the law action. The statute does not afford a period of temporary relief from the enforcement of contractual obligations, but it changes and alters the nature of the relief which existed as a means of enforcing contractual obligations. The obligee is deprived of his right to liquidate the same and is forced to accept a right of action to determine the amount which he may recover." *Fidelity Union Trust Co.* v. *Bryant,* 14 *N. J. Mis. R.* 243, 245.

It is urged that the preamble meets the objections to the 1933 enactment condemned in *Vanderbilt* v. *Brunton Piano Co., supra.* The enacting part of the statute being clear and unambiguous is not controlled or affected by anything in the preamble. *Brown* v. *Erie Railroad Co.,* 87 *N. J. L.* 487; *Den, Lloyd & Fox* v. *Urison,* 2 *N. J. L.* 212. It is only when the statute is ambiguous and difficult of interpretation that the preamble may be resorted to. *James* v. *DuBois,* 16 *N. J. L.* 285.

The judgment is affirmed with costs.

HEHER, J. (Dissenting.) My view is that the statute under review in its major aspect is essentially procedural in character. It relates to the remedy for the enforcement of the contract, and does not in any real sense impair the substance of the contractual right. It vests in the law courts a jurisdiction that has always been conceded to equity where the mortgagee is the purchaser of the security at the sale held pursuant to the decree of foreclosure, *i. e.,* to prevent the unjust enrichment of the mortgagee, especially where financial stringency over a long period has reduced the executory process of public sale in foreclosure to a mere shadow— inefficacious as a mode of producing, through competitive bidding, the fair value of the mortgaged lands—and has also deprived the mortgagor of all means of self-protection.

In *Richmond Mortgage and Loan Corp.* v. *Wachovia Bank and Trust Co.,* 300 *U. S.* 124; 57 *S. Ct.* 338; 81 *L. Ed.* 552; 108 *A. L. R.* 886, the federal Supreme Court, interpreting the contract clause of the federal constitution, declared: "The legislature may modify, limit or alter the remedy for enforcement of a contract without impairing its obligation, but in so doing, it may not deny all remedy or so circumscribe the existing remedy with conditions and restrictions as seriously to impair the value of the right. The particular remedy existing at the date of the contract may be altogether abrogated if another equally effective for the enforcement of the obligation remains or is substituted for the one taken away." And, in sustaining a statute permitting the mortgagor, in a

deficiency suit, to show as matter of defense and set-off, but not by way of counter-claim, the "true value" of the mortgaged lands when sold by a mortgagee, trustee or other person authorized to make sale of the same, at a "sale  *  *  *  at which the mortgagee, payee or other holder of the obligation thereby secured becomes the purchaser and takes title either directly or indirectly," Mr. Justice Roberts said: "The contract contemplated that the lender should make itself whole, if necessary, out of the security, but not that it should be enriched at the expense of the borrower or realize more than would repay the loan with interest. The state provided remedies whereby the security could be made available for solution of the debt. When the loan was made two such remedies were available. The mortgagee could proceed by bill in equity to foreclose the security. If it did the chancellor who controlled the proceeding could set aside a sale if the price bid was inadequate. In addition, he might award a money decree for the amount by which the avails of the sale fell below the amount of the indebtedness, but his decree in that behalf would be governed by well understood principles of equity. An alternative remedy sanctioned by state law was available if the deed of trust so provided. This was the sale of the pledged property by the trustee. If this were the remedy authorized by the contract, and the mortgagee himself became the purchaser at the trustee's sale, he might thereafter, in an action at law, recover the difference between the price he had bid and the amount of the indebtedness.  *  *  * The section with which we are concerned adds that if the mortgagee becomes the purchaser at the trustee's sale, and afterwards brings an action at law for a deficiency, the jury shall determine the actual amount needed by him to make him whole for his debt by finding the true or fair value of the property at the date of sale, the judgment being for the difference between that value and the amount of the debt remaining unpaid, or, if the value found equals the amount of the debt, for the defendant. The statute has no application if the purchaser at the trustee's sale be other than the mortgagee. The act alters and modifies one of the existing reme-

dies for realization of the value of the security, but cannot fairly be said to do more than restrict the mortgagee to that for which he contracted, namely, payment in full. It recognizes the obligation of his contract and his right to its full enforcement but limits that right so as to prevent his obtaining more than his due. By the old and well known remedy of foreclosure a mortgagee was so limited because of the chancellor's control of the proceeding. That proceeding, as has been said, has always been available to the mortgagee in North Carolina. Granting that by the alternative remedy of trustee's sale the mortgagee might perchance obtain something more, or might obtain only that which was his due somewhat more expeditiously, than he could in chancery, it remains that the procedure to foreclose in equity is, and has been, the classical method of realization upon mortgage security and has always been understood to be fair to both parties to the contract and to afford an adequate remedy to the mortgagee. If, therefore, the legislature of the state had elected altogether to abolish the remedy by trustee's sale we could not say that it had not left the mortgagee an adequate remedy for the enforcement of his contract. But the legislature has by no means gone so far. The law has merely restricted the exercise of the contractual remedy to provide a procedure which, to some extent, renders the remedy by a trustee's sale consistent with that in equity."

While inadequacy of price, without more, is not ordinarily a sufficient ground for the vacation of a public sale held pursuant to a decree of foreclosure, I entertain no doubt of the power of our court of equity, in the exercise of its general foreclosure jurisdiction, to prevent unjust enrichment by commanding the mortgagee-purchaser at such sale, as a condition of confirmation, to credit upon the underlying obligation the "fair market value" of the mortgaged lands, where extraordinary economic conditions have reduced the foreclosure sale to a vain and futile proceeding, incapable of achieving the purpose it was designed to serve, i. e., the realization of the fair value of the security, and have also put all protective measures beyond the reach of the mortgagor.

This authority has been freely exercised during the current trade depression. For examples, see *Federal Title and Mortgage Guaranty Co.* v. *Lowenstein,* 113 *N. J. Eq.* 200; *Young* v. *Weber,* 117 *Id.* 242; *National Mortgage Corp.* v. *Deering,* 121 *Id.* 274; *Lurie* v. *J. J. Hockenjos Co.,* 115 *Id.* 304; *Harvester Building and Loan Assn.* v. *Kaufherr,* 122 *Id.* 373; *Fidelity Union Trust Co.* v. *Pasternack,* 123 *Id.* 181. The doctrine that the sale should stand unless the price is so grossly inadequate as to support the inference of fraud, or to shock the judgment and conscience, or is accompanied by an independent substantive ground for equitable relief, such as fraud, accident, surprise, irregularity in the sale, and so on, derives from the need of securing the integrity of the executory process of public judicial sale, and is plainly not applicable when it no longer serves the underlying policy. *Karel* v. *Davis,* 122 *Id.* 526.

And the vesting of like authority in the courts of law does not, in my opinion, contravene the constitutional precept against the impairment of contractual obligations. Disregarding the strict technical formalism of the common law, the modern concept of a mortgage, recognized and effectuated in equity, is that of a mere lien-security for the payment of the debt. *J. W. Pierson Co.* v. *Freeman,* 113 *N. J. Eq.* 268. The ancient equitable remedy of strict foreclosure (which assumes in modern practice possession by the mortgagee under his legal title), while still in vogue in England, has given way in this state, and in most of the other jurisdictions of the country, to the foreclosure by judicial sale, a process designed to realize the fair value of the security—one that serves the purpose under normal conditions. That was implicit in the statute when the contract was made. *Comp. Stat.* 1910, *p.* 3422, ¶ 50; *Rev. Stat.* 1937, 2:65-12. While the remedy thus granted by the statute under review is discretionary in equity, that does not constitute a difference that strikes at the obligation of the contract. It is nevertheless relief that may be had in equity; and the legislature, in my view, does not transcend its constitutional powers when it treats the mortgage as a mere security and invests the courts of law with authority to

afford the like remedy when, pursuant to the statute, a deficiency action upon the obligation is instituted. It was otherwise within the competency of the legislature to clothe courts of law with such concurrent jurisdiction. *Sweeney* v. *Williams,* 36 *N. J. Eq.* 627; *Force* v. *City of Elizabeth,* 27 *Id.* 408; *Irick* v. *Black,* 17 *Id.* 189, 198; *State Board of Milk Control* v. *Newark Milk Co.,* 118 *Id.* 504.

Nor do I think it works a deprivation of a remedy for the enforcement of the contract within the constitutional sense. As pointed out in *Lapp* v. *Belvedere,* 116 *N. J. L.* 563, there is, as regards this constitutional mandate, little or no practical difference between the obligation of a contract and the remedy for its enforcement. Where a remedy of substantially like character remains, or a substitute means of enforcement of the same species are given, there is no impairment of the substance of the right—there is no lessening of the force, efficiency, or value of the obligation. The mortgagee suffers no loss when he yields credit for the "fair market value" of the security. He has no constitutional or vested right to the maintenance of a particular procedural system where his substantive contractual rights are otherwise fully enforceable.

We are obliged to take judicial notice (we have had specific proof in cases that have come into the court in late years) of the utter lack of competitive bidding at public foreclosure sales held during the recent years of economic stress. With rare exceptions, the mortgagee or holder of the basic obligation is, by reason of the general decline of realty values below the amount of the mortgage encumbrance and tax arrears, the purchaser of the security at a nominal bid. It seems to be generally assumed that the mortgagee will bid to the amount of his debt, or nearly so. The instant case is typical. The mortgage was given to secure the payment of $11,000. At the sale, the mortgaged lands were struck off and sold to the complainant-mortgagee on its lone bid of $100. It now has judgment for the full amount of the deficiency, so measured, $10,953.05. It is beyond the province of the legislature to confer upon the law courts jurisdiction to remedy this gross injustice? It seems to me the statement of the proposition carries its own refutation.

Adherence to the form is utterly devoid of significance and meaning if the substance has vanished. The law abhors double satisfaction of the mortgage debt. Compare *Luparelli* v. *United States Fire Insurance Co.,* 117 *N. J. L.* 342; *affirmed,* 118 *Id.* 565. After all, credit is to be given only for the "fair market value" of the mortgaged lands. More than that is not allowable; and considerations of equity and justice dictate that it shall not be less. "Fair market value" is synonymous with "reasonable market value." Convertibility within a reasonable time is a plain connotation. The constitutional limitation invoked was not designed, as I view it, to secure to the mortgagee his remedy by forced sale where, due to extraordinary general conditions such as obtain here, that course would, by reason of the utter lack of a market at such sales, net him substantially more than the mortgage debt—in fact a double satisfaction. To hold that it was so conceived constitutes, it seems to me, an exaltation of the form over the substance. Hence, the statute, as applied to cases such as this does not materially lessen the value of the contract; it does not impair the substance of right or remedy. And it is pertinent to observe that it was deemed politic under our early equity practice to frame an issue for the determination of land value. *Trenton Banking Co.* v. *McKelway,* 8 *N. J. Eq.* 84. And this is the policy of our Condemnation act.

Even at law there is raised, in a variety of cases, the fictitious promise—of the class *obligationes quasi ex contractu*—whose obligation rests upon the fundamental principle of justice that no one ought unjustly to enrich himself at the expense of another. In such cases, the right, enforceable as in the case of true contracts by the action of *indebitatus assumpsit,* derives not from the common intention of the parties, but from "what in equity and good conscience the defendant ought to do." *First National Bank of South Amboy* v. *Perth Amboy Iron and Metal Co.,* 119 *N. J. Eq.* 569; *P. Ballantine & Sons* v. *Gulka,* 117 *N. J. L.* 84; *Keener on Quasi Contracts, pp.* 5, 16, 19 *et seq.*

And I hold to the view that the constitutional invalidity

of the enactment as applied to cases where the mortgagee or holder of the obligation is not the purchaser at the foreclosure sale, if it be given that broad construction, does not render it inoperative *in toto*. The test is whether the application of the statute to the instant case serves to impair the obligation of respondent's contract, and therefore obliges the judicial authority to disregard it. *Attorney-General* v. *McGuinness, 78 N. J. L.* 346, 369; *Allison* v. *Corker,* 67 *Id.* 596; *State* v. *Sutton,* 83 *Id.* 46; *affirmed,* 87 *Id.* 192; *affirmed,* 244 *U. S.* 258; 37 *S. Ct.* 508; 61 *L. Ed.* 1117; *Morgan* v. *Monmouth Plank Road Co.,* 26 *N. J. L.* 99. Paragraph 3 provides that "should any part of" the act, "for any reason, be considered by any court and be adjudged unconstitutional or invalid, such judgment shall not affect, impair or invalidate the remaining provisions thereof, but shall be confined in its operation to the specific provisions so held unconstitutional or invalid." A statute containing valid provisions is not to be judicially declared wholly inoperative as in contravention of a constitutional limitation, "unless all the provisions are connected in subject-matter, depending on each other, operating together for the same purpose, or otherwise so connected together in meaning, that it cannot be presumed the legislature would have passed the one without the other. The constitutional and unconstitutional provisions may even be contained in the same section, and yet be perfectly distinct and separable, so that the first may stand though the last fall. The point is not whether they are contained in the same section; for the distribution into sections is purely artificial; but whether they are essentially and inseparably connected in substance. If, when the unconstitutional portion is stricken out, that which remains is complete in itself, and capable of being executed in accordance with the apparent legislative intent, wholly independent of that which was rejected, it must be sustained." *Cooley Const. Lim.* (*8th ed.*) 360 *et seq.*

And the author continues thus (at *p.* 366) : "A legislative act may be entirely valid as to some classes of cases, and clearly void as to others. A general law for the punishment of offenses, which should endeavor to reach, by its retroactive

operation, acts before committed, as well as to prescribe a rule of conduct for the citizen in the future, would be void so far as it was retrospective; but such invalidity would not affect the operation of the law in regard to the cases which were within the legislative control. A law might be void as violating the obligation of existing contracts, but valid as to all contracts which should be entered into subsequent to its passage, and which therefore would have no legal force except such as the law itself would allow. [A state statute which interferes with interstate commerce, while invalid in so far as it does so, may be valid in its application to intrastate commerce. In response to a question whether a single tax, assessed by a state upon the receipts of a telegraph company derived partly from interstate commerce and partly from commerce within the state, but returned and assessed in gross and without separation or apportionment, was wholly valid or invalid only in proportion and to the extent that the receipts were derived from interstate commerce, the Supreme Court of the United States (*Ratherman* v. *Western Union Telegraph Co.*, 127 *U. S.* 411; 8 *S. Ct.* 1127; 32 *L. Ed.* 229) unanimously answered that so far as levied upon receipts derived from interstate commerce the tax was void, but so far as levied upon receipts from commerce wholly within the State it was valid.] In any such case the unconstitutional law must operate as far as it can, and it will not be held invalid on the objection of a party whose interests are not affected by it in a manner which the constitution forbids. If there are any exceptions to this rule, they must be of cases only where it is evident, from a contemplation of the statute and of the purpose to be accomplished by it, that it would not have been passed at all, except as an entirety, and that the general purpose of the legislature will be defeated if it shall be held valid as to some cases and void as to others." See *St. John the Baptist Greek Catholic Church* v. *Gengor*, 121 *N. J. Eq.* 349; *Stackhouse* v. *Camden*, 96 *N. J. L.* 533; *State* v. *Sutton*, *supra; United Stores Realty Corp.* v. *Asea*, 102 *N. J. Eq.* 600; *Morgan* v. *Monmouth Plank Road Co.*, *supra.*

There is a presumption that the legislation was addressed to a constitutional end; and it is a corollary of this proposition that the courts are under a duty to adopt a construction that will render the act constitutional, if that may reasonably be done. *St. John the Baptist Greek Catholic Church* v. *Gengor, supra; McCarthy* v. *Walter,* 108 *N. J. L.* 282; *State* v. *Sutton, supra.* Doubt as to the validity of the enactment is not enough; its invalidity must be so manifest as to leave no room for reasonable doubt. *Attorney-General* v. *McGuinness, supra; Sexton* v. *Newark District Telegraph Co.,* 84 *Id.* 85; *affirmed,* 86 *Id.* 701; *St. John the Baptist Greek Catholic Church* v. *Gengor, supra.*

Viewing the statute in the light of the conditions that brought it into being, it is evident that the dominant legislative purpose was to preclude the unjust enrichment of the mortgagee, at the expense of the mortgagor, through the former's acquisition of the security on a nominal bid and a recovery upon the underlying obligation for the deficiency, so measured—a double satisfaction; and so this outstanding objective is not affected by other provisions that may not meet the test of constitutionality when given concrete application. As stated, the holder of the security is, with few exceptions, the purchaser at the foreclosure.

Upon these grounds, I vote to reverse the summary judgment awarded plaintiff.

Mr. Justice Perskie and Judge Walker join in this opinion.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, JJ. 11.

*For reversal*—HEHER, PERSKIE, WALKER, JJ. 3.