196 So. 103
**FIRST NAT. BANK OF BIRMINGHAM v. JAFFE.**

6 Div. 634.

Supreme Court of Alabama.

May 16, 1940.

Graham & Wingo, of Birmingham, for appellant.

William S. Pritchard and David R. Solomon, both of Birmingham, for appellee.

FOSTER, Justice.

The question of primary importance in this case is whether the Deficiency Judgments Act of June 24, 1935, Gen.Acts 1935, page 184, has application.

The suit is on a promissory note dated June 1, 1927, due in installments, the last of which matured June 1, 1932.

The benefit of the Act, above mentioned, was invoked by filing pleas 4 and 6 (so far as here material to mention them) to which demurrer was overruled. So far as here material, they allege that the debt sued for was secured by a mortgage on real estate when it was created, which was foreclosed on December 5, 1933, when there was such a financial and economic depression in Alabama, as was declared to exist in the preamble of the Act of 1935, supra; that the amount bid at said foreclosure sale by plaintiff was $4,000, and that said property was worth at its fair market value at that time the sum of $8,500, which is an amount in excess of the balance claimed in the complaint, and which is hereby claimed as set off, but without a judgment over for the excess. This suit was begun May 31, 1938, and tried April 25, 1939.

The two questions raised by demurrer, and here urged by appellant, are (1) that the Act of 1935, supra, does not serve to change a deficiency status which was created before its enactment, though at the time of the foreclosure by which it was created, there existed the economic depression described in the preamble of the Act; and (2) that at the time the suit was begun and heard the economic depression which was the only justification for the Act, and on which it rested, had passed, and did not exist.

It is here emphasized that the pleas rest upon the assertion that at the time of the foreclosure, the emergency existed, and that the Act in question is controlling though it was enacted after the foreclosure.

Sections 3 and 4 of the Act are here relied on. In section 3 it is enacted that in a suit on a note secured by a real estate mortgage defendant may set off an amount equal to the fair market value of the real estate covered whether the mortgage has been foreclosed or not. In section 4, in such a suit on a debt so secured, when the mortgage has been foreclosed, either before or after the institution of the suit, defendant may by plea allege that the property did not bring its fair value at the foreclosure sale, and may thereby be credited with such fair value. In both sections it was declared that they shall apply in all actions at law then pending or thereafter instituted. Does that mean to enact, by referring to actions pending at the time of its enactment, that it intended to affect the rights of a mortgagee who had foreclosed his mortgage theretofore and had established a contractual status pursuant to law as then operative and there effective?

This question has not been directly decided by this Court. We approached it in Birmingham Trust & Savings Co. v. Joseph, 234 Ala. 271, 175 So. 275. There the plea in question did not allege the date of the foreclosure, either with reference to that of the depression or the enactment of the Act. We held that the foreclosure must have been during the period of the depression, and that since the plea did not so allege, it did not show a right under the Act. We rested the decision upon that status, without discussing the further question raised by a failure to allege that the foreclosure occurred since the enactment of the Act. This was also true in the case of Robertson v. Lytle, 236 Ala. 362, 182 So. 30. In that case the date of foreclosure is averred to have been before the enactment, but the decision is rested on an absence of averment sufficient to invoke the benefits of the Act—other questions in that connection being eliminated.

We may eliminate at the outset consideration of those acts of the legislature which relate to the remedy by which an executory right may be enforced, and to a change of such remedy even modifying that which is within the stipulation of the parties. That is the status of such cases as Richmond Mortgage & Loan Corp. v. Wachovia Bank & Trust Co., 300 U.S. 124, 57 S.Ct. 338, 81 L.Ed. 552, 108 A.L.R. 886; Worthen Co., ex rel. v. Kavanaugh, 295 U.S. 56, 55 S.Ct. 555, 79 L.Ed. 1298, 97 A.L.R. 905; Home Bldg. & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 238, 79 L.Ed. 413, 88 A.L.R. 1481; Honeyman v. Jacobs, 306 U.S. 539, 59 S.Ct. 702, 83 L.Ed. 972; Honeyman v. Hanan, 302 U.S. 375, 58 S.Ct. 273, 82 L.Ed. 312.

■ But a statute which gives a new legal effect to conduct or conditions occurring or existing prior to its enactment is odious to the law, even though it may not offend the Constitution. Barrington v. Barrington, 200 Ala. 315, 76 So. 81. A statute will not be so construed unless it is so plainly intended by the legislature by the use of its language and attendant circumstances.

■ This Act is not explicit in this respect, and if the legislature had intended to make it apply to foreclosures theretofore occurring, the rule of the Barrington case, supra, would have suggested precise language to that effect in the Act.

■ But it is our view that to do so, and to that extent, it would invade constitutional rights. Sections 22, Constitution of Alabama, prohibits the legislature from passing any law impairing the obligations of contracts. Section 95 is to like effect with the further provision that this cannot be done by destroying or impairing the remedy for their enforcement. A like prohibition is contained in section 10, Article 1, of the Federal Constitution. And private property rights cannot be taken except by due process, section 6, Constitution, and when for a public use upon payment of just compensation. Section 23, Constitution. The liberty of contract is a natural right, but not absolute and is in a measure subject to the legitimate exercise of the police power of the state. 16 Corpus Juris Secundum, Constitutional Law, § 210, pp. 618, 619; Hohenberg & Co. v. Hendrix, 213 Ala. 406, 105 So. 195; Home Building & Loan Ass'n v. Blaisdell, supra.

Sometimes vested rights may be impaired or divested in the legitimate exercise of the police power. 16 Corpus Juris Secundum, Constitutional Law, § 216, p. 643; Ballenger Const. Co. v. State Board of Adjustment, 234 Ala. 377, 175 So. 387.

■ The police power which will enable the legislature to impair a vested or contract right, does not exist unless it be for an end which is in fact public, and the means adopted must be reasonably adapted to that end. State of Indiana v. Brand, 303 U.S. 95, 58 S.Ct. 443 (9), 82 L.Ed. 685, 113 A.L.R. 1482.

■■ This power is said to justify legislation in the promotion of general economic welfare during a time of great financial distress, whose object is to give a limited and temporary restraint on enforcement of a vested right without impairment of its status as such. But the existence of an economic depression creating a national emergency, it was held by the United States Supreme Court, would not "permit the State to adopt as its policy the repudiation of debts or the destruction of contracts or the denial of means to enforce them. * * * when the exercise of the [police] power of the State, in order to meet public need because of a pressing public disaster, relates to the enforcement of existing contracts, that action must be limited by reasonable conditions appropriate to the emergency. This is but the application of the familar principle that the relief afforded must have reasonable relation to the legitimate end to which the State is entitled to direct its legislation. Accordingly, in the case of Blaisdell, we sustained the Minnesota mortgage moratorium law in the light of the temporary and conditional relief which the legislation granted." Worthen Co. v. Thomas, 292 U.S. 426, 54 S.Ct. 816, 818, 78 L.Ed. 1344, 92 A.L.R. 173; Home Building & Loan Ass'n v. Blaisdell, supra; Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106; Klinke v. Samuels, 264 N.Y. 144, 190 N.E. 324.

Our own moratorium act of 1935, supra, was sustained by us because and to the extent that it did not authorize a repudiation or depletion of the obligations of the contracts to which it referred, but provided a temporary suspension of their enforcement, and made certain changes in the remedies theretofore existing. Mutual Building & Loan Ass'n v. Moore, 232 Ala. 488, 169 So. 1; Birmingham Trust & Savings Co. v. Joseph, 234 Ala. 271, 175 So. 275; Robertson v. Lytle, 236 Ala. 362, 182 So. 30; Alabama Mortgage & Securities Corp. v. Chinery, 237 Ala. 198, 186 So. 136.

But we pointed out in the Moore case, supra, that laws cannot impair the obligation of existing contracts, citing Edwards v. Williamson, 70 Ala. 145, and that though public misfortune justified changes of remedy it must be without impairing the obligation of contracts, citing Curry v. Reynolds, 44 Ala. 349.

At the time of the enactment of the Act of 1935, supra, and at the time of the foreclosure of the mortgage in question, the law of Alabama was settled and clear fix-

**572**

ing the method of computing the amount of a deficiency claim resulting from the foreclosure of a mortgage in strict conformity to its power. Continental Casualty Co. v. Brawner, 227 Ala. 98, 148 So. 809; Robertson v. Lytle, 236 Ala. 362, 182 So. 30.

■ That circumstance established a vested substantive status when those terms were pursued, leaving an ascertainable debt. The amount of that debt could not be reduced by a law not in existence when that status was established, although the depression existed at the time of the foreclosure and at the time when the law was enacted. And under no aspect of constitutional interpretation could the Act continue to have effect on a status created before its enactment in a suit heard and determined after the emergency has passed, though the Act by its terms had not terminated. We have heretofore fully discussed that principle. It is a matter well known to all that when this judgment was rendered in April 1939, the emergency had fully passed.

We do not have here a status created by a foreclosure at a time when the Act was in full force, and when such status is in question in court at a time when the force of the Act had terminated.

Appellees claim that they were due the affirmative charge on other pleas, so that there was no prejudice in the ruling on the demurrer to pleas 4 and 6, though the evidence tended to prove them.

■ On the plea of bankruptcy by the executrix of Julius Jaffe, it is not clear that the schedule included this claim, though the bank was named as a creditor but not as trustee under the declaration of trust by which this claim of the bank depends. The discharge in bankruptcy released the bankrupt from all provable debts known to him except those not scheduled, unless such creditor had notice or actual knowledge of the proceeding in bankruptcy. The burden is on the creditor to prove that his debt was not scheduled: having done so, the burden is on the debtor to prove that the creditor had notice of the bankruptcy proceeding. Hill v. Smith, 260 U.S. 592, 43 S.Ct. 219, 67 L.Ed. 419; 8 Corpus Juris Secundum, Bankruptcy, § 586, p. 1588.

■ Appellees insist that the burden was on the plaintiff to show that it did not have notice of the bankruptcy, and did not meet that burden. Plaintiff's replication does allege that it did not have such notice. Does that allegation impose on plaintiff a burden which the law did not cast on it? Negative averments in pleading need not be proved by the one so doing unless his action or defense is grounded upon it. Freeman v. Blount, 172 Ala. 655, 55 So. 293; New York Life Ins. Co. v. Beason, 229 Ala. 140, 155 So. 530; Walker v. Palmer, 24 Ala. 358.

■ This principle applies to an allegation of an absence of notice. Carroll v. Malone, 28 Ala. 521, 525; Hunt's Heirs v. Ellison's Heirs, 32 Ala. 173, 213; Somerall v. Citizens' Bank, 211 Ala. 630, 101 So. 429; Slaughter v. First National Bank, 109 Ala. 157, 19 So. 430; Elmore County Bank v. Avant, 189 Ala. 418, 66 So. 509.

The burden here was not on plaintiff to prove an absence of notice by it of the bankruptcy proceeding. We cannot say that on the issue so made by the plea and replication the defendant executor was due the affirmative charge.

■ Appellant also filed a replication that the bankrupt promised to pay the debt after he had been adjudged a bankrupt and after he was discharged. This is of course a good answer to the plea. Harvey v. Bodman, 212 Ala. 503, 103 So. 569; Nix & Son v. Choate, 216 Ala. 189, 113 So. 16.

The evidence was probably sufficient to carry that issue to the jury also. 8 Corpus Juris Secundum, Bankruptcy, § 587, p. 1591; Dantzler v. Scheuer, 203 Ala. 89, 82 So. 103. Its effect is not necessary to a decision now to be made.

■ The defendant Carrye B. Jaffe, individually, also pleaded that she signed the note as security for her husband's debt. She was not due an affirmative instruction on that issue, but discussion of it by us would not be appropriate in the light of the new trial to be had. Moreover, plaintiff also replied that it was a holder in due course of the note without notice of such defense. This issue was also one for the jury.

There was evidence of the facts alleged in pleas 4 and 6, and the verdict of the jury could have been based on those pleas. Defendants were not due the affirmative charge on other pleas, so that there was

prejudicial error in overruling demurrer to pleas 4 and 6, for which the judgment must be reversed.

Reversed and remanded.

THOMAS, BROWN, and LIVINGSTON, JJ., concur.