ALLIANCE TRUST CO., Ltd., v. HILL, Ex'x, et al.

No. 31739. Nov. 20, 1945.

Rehearing Denied Jan. 15, 1946.

*164 P. 2d 984.*

E. O. Clark, of Stigler, for plaintiff in error.

W. G. Stigler, of Stigler, for defendants in error.

DAVISON, J. This case is presented on appeal from the district court of Haskell county. On January 2, 1922, Arthur T. Hill (now deceased) and Carrie T. Hill, his wife, borrowed $8,000 from the Alliance Trust Company, Limited, a corporation, and then and there made, executed, and delivered to said Alliance Trust Company, Limited, their promissory note for that amount. At the same time and for the purpose of securing the payment of said note, Arthur T. Hill and Carrie T. Hill executed, acknowledged, and delivered to the Alliance Trust Company their certain real estate mortgage covering 160 acres of land situated in Haskell county, Okla. The mortgage contained the words "appraisement waived".

The interest on the mortgage debt was paid annually throughout the years until and including the year 1940, but no part or portion of the principal debt was paid.

This action to foreclose the mortgage was instituted on September 16, 1941, by the Alliance Trust Company, Limited, a corporation, as plaintiff, against Carrie T. Hill et al., as defendants.

On October 1, 1942, judgment was rendered by the trial court in favor of the plaintiff and against the defendants. The indebtedness due and owing from the defendants to the plaintiff was found and determined to be for the sum of $10,222.46, inclusive of principal, interest, attorneys' fees and costs.

Thereafter and after the lapse of six months from the date of judgment the mortgaged land was advertised for sale and sold to the plaintiff in the action for the sum of $3,500. The plaintiff then moved for a deficiency judgment, upon which motion the trial court heard evidence from which it concluded that on the date of sale of the mortgaged property the amount of the debt secured by the mortgage was $10,222.-46, inclusive of principal, interest, attorneys' fees and costs. The trial court also determined and found that the property was sold to the plaintiff for $3,500 and that the actual fair and reasonable market value of the land at the date of the sale was $8,000. The trial court thereupon ordered and directed that the plaintiff have a deficiency judgment for the sum of $2,-222.46. This amount represented the difference between $10,222.46 and $8,-000, the value of the land as found by the court at the time of the sale. The plaintiff insisted that it was entitled to judgment for $6,222.46, the difference between the face of the judgment and the purchase price of the land at sheriff's sale.

From the order of the trial court determining the amount of the deficiency judgment, the plaintiff has appealed and appears before this court as plaintiff in error. For the sake of convenience we shall continue to refer to the parties by their trial court designation.

Plaintiff presents the following proposition:

"The Act of the Legislature, approved May 5, 1941 (O. S. 1941, Title 12, § 686) amending Section 670, Compiled Statutes 1921, Section 424, Okla-

homa Statutes 1931, altering the basis for determining the amount of the deficiency by substituting the fair and reasonable market value of the mortgaged premises as of the date of sale or · such nearest earlier date as there shall have been any market value thereof for the proceeds of the foreclosure sale, unconstitutionally impairs the obligation of the mortgage in the instant case executed prior to its enactment for the reason it is in .violation of Article II of Section 15 of the Oklahoma Constitution and Article I of Section 10 of the Constitution of the United States."

Before the enactment of chapter 12 of title 12, S. L. 1941, pg. 35, it was proper and appropriate to take a deficiency judgment for the difference between the amount of the judgment and the price bid and for which the sale was confirmed, but from and after the effective date of chapter 12, art. 12, S. L. 1941, it became appropriate for the trial court to ascertain the fair and reasonable market value of the mortgaged premises. at the date of sale or the nearest preceding date on which it had a market value and to deduct said sum from the amount due on the judgment in order to ascertain the correct amount of the deficiency judgment.

The question to be decided is whether this change in the law constituted an impairment of the obligation of mortgage contract.

Subsequent to the amendment in 1941 (title 12, chapter 12, S. L. 1941) the section contained the following language which did not appear in the section prior to the amendment:

". . . Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a· deficiency judgment · upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encumbrances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher. If no motion for a deficiency judgment shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist."

The application of this provision of the statute to a mortgage which existed prior to its enactment is said to constitute an impairment of the obligations of the mortgage contract.

The Constitution of the United States provides that "No state shall . . . pass any . . . law impairing the obligation of contracts." Article 1, sec. 10.

Our State Constitution, in section 15 of article II, provides that no "law impairing the obligation of contracts shall ever be passed."

Is chapter 12, title 12, S. L. 1941, a law which impairs the obligation of contracts? It is apparent by comparison that the Federal Constitution places · the same limitation on State Legislatures as is contained in our State Constitution.

The question now before .us was squarely presented to the Supreme Court of the United States in Gelfert v. National City Bank of New York, 313 U. S. 221, 85 L. Ed. 1299, 133

A. L. R. 1467. In that case the court said:

"Mortgagees are constitutionally entitled to no more than payment in full. Honeyman v. Jacobs, 306 U. S. 539, 83 L. Ed. 972, 59 S. Ct. 702, supra. They cannot be heard to complain on constitutional grounds if the Legislature takes steps to see to it that they get no more than that. As we have seen, equity will intervene in individual cases where it is palpably apparent that gross unfairness is imminent. . . . But there is no constitutional reason why in lieu of the more restricted control by a court of equity the Legislature cannot substitute a uniform comprehensive rule designed to reduce or to avoid in the run of cases the chance that the mortgagee will be paid more than once. . . ."

It was thus held by the Supreme Court of the United States that a state law, applicable generally and not limited to any declared public emergency, which provides in substance that in determining the amount of a deficiency judgment on the foreclosure of a mortgage the court shall fix the "fair and reasonable market value" of the property and shall deduct from the amount of the debt either such market value or the sale price of the property, whichever is the higher, is not, in a case where the mortgagee purchased the property, an unconstitutional impairment of the obligation of contract as applied to a mortgage which was executed before the enactment of the statute.

To the same general effect see Richmond Mortgage & Loan Corporation v. Wachovia Bank and Trust Co., 300 U. S. 124, 81 L. Ed. 552, and annotations in 133 A. L. R. 1473; 130 A. L. R. 1482; 115 A. L. R. 435 and 108 A. L. R. 891.

The wording of our State Constitution and that of the Federal Constitution are substantially the same. We therefore conclude and hold that title 12, chapter 12, S. L. 1941, does not impair the obligation of the mortgage contract under either the State or Federal Constitution.

The proceeding before the trial court conformed to the views herein expressed. The decision of that court should be and is affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY and ARNOLD, JJ., concur. OSBORN, BAYLESS, WELCH, and CORN, JJ., dissent.

BAYLESS, J. (dissenting). Because the opinion of the majority of the court follows the recent decision of the Supreme Court of the United States in Gelfert v. National City Bank, 313 U. S. 221, 85 L. Ed. 806, 133 A. L. R. 1467, without independent study, and because I think there is a fundamental error involved in the view adopted, I feel compelled to state my reasons for dissenting.

Herein, as the highest court of the state, we are required to construe and apply section 15 of art. II of our State Constitution, providing ". . . nor any law impairing the obligation of contracts, shall ever be passed." I think the act under consideration clearly violates this constitutional provision. Our duty in construing the provisions of our Constitution and our laws is as sacred and binding upon us as is the duty of the members of the Supreme Court of the United States in construing the provisions of the Federal Constitution.

Prior to the adoption of the act under consideration the contracting parties to a mortgage in Oklahoma could permit the foreclosure proceedings to follow our statutes relating to execution on judgment generally, in which instance appraisers were appointed to view the property and estimate its reasonable market value, after which the property was required by law to sell for at least two-thirds the appraised value; or they could, by the adoption of the words "appraisement waived" or other appropriate words, as was done in this case, waive appraisement, in return for which the maker of the mortgage received a six months stay of execution. In either instance the adequacy of the sale price had to meet the standards adopted and

faction of the money judgment, and
tioned, (5) the right to have the sale
satisfy the money judgment, the sale
(4) the right to have the sale confirmed
to be with or without appraisement,
price so realized applied to the satis-
(6) if the sum realized was insufficient
judgment ordering the land sold to
upon the equitable principle above men-
applied by this court with respect to
the equitable sufficiency thereof, and
until the passage of this act, that law
governed. To summarize the effect of
what has been said it should be noted
that at the time the note and mortgage
involved were given, the holder could
sue for nonpayment and was entitled
(1) to a money judgment equal to what
was found to be due on the debt, (2)
to a judgment establishing the exist-
ence and priority of the lien, (3) a
to satisfy the money judgment, then the
right of additional process suited to the
case.

It can be seen that the amendment under consideration leaves the holder of this note and mortgage with steps (2), (3), and (5) unaffected, and step (4) probably affected. It is obvious that his rights as steps (1) and (6) are definitely abridged. In the majority opinion the argument made by Hill is adopted that there is implicit in the amendment under consideration the theory that the money judgment is at best temporary in amount and that amount eventually to be recovered by the mortgage holder is superseded by later orders of the court upon extraneous considerations. Step (6) has been completely altered. It has been seen that now, but not prior to the act under consideration, coincident with or in any event within 90 days after the sale, the judgment creditor, if the sale did not produce enough to satisfy his judgment in full, must, or otherwise automatically lose the unpaid balance of his judgment, submit to the court an issue of whether the land sold had a "reasonable market value" equal to or in excess of his judgment and ask for a deficiency judgment accordingly. Thus a judgment holder must, whether he buys or a stranger buys, whether the land be sold with or without appraisement, suffer the risk of a further diminution of his judgment if the court is later of the opinion that the land sold for less than its reasonable market value or lose his judgment altogether. It is significant in this respect that no burden is placed on the judgment debtor, but the burden is placed upon the judgment creditor to defend the status of his judgment which had theretofore been rendered by a court of competent jurisdiction. It is significant that this must be done in addition to submitting to the court the issue of the confirmation of the judgment upon equitable grounds, and in this instance the majority opinion makes no reference to the fact that Hill first objected to the confirmation of this sale upon the ground that the amount for which it sold was inadequate, but later withdrew the objection and permitted the sale for the amount shown by the record to be confirmed without objection. In my opinion the conclusion is inescapable that this works a definite and drastic change in the remedy that existed at the time these parties contracted and is in violation of the Constitution of Oklahoma, sec. 15, art. II.

Prior to the opinion of the Supreme Court of the United States in the Gelfert Case, supra, the rule was contrary to the majority opinion and in conformity with the views herein, which in turn were based upon an unbroken line of decisions by the Supreme Court of the United States, Bronson v. Kinzie, 1 How. 311, 11 L. Ed. 143; McCracken v. Hayward, 2 How. 608, 11 L. Ed. 397; Barnitz v. Beverly, 163 U. S. 118, 41 L. Ed. 93, and many other cases. In addition there was general unanimity of view among the state courts, as can be seen from Adams v. Spillyards, 187 Ark. 641, 61 S. W. 2d 686; Langever v. Miller, 124 Tex. 80, 76 S. W. 2d 1025, 96 A. L. R. 836, and the annotation following at page 853; the annotation in 108 A. L. R. 891; the annotation in 115 A. L. R. 435; Kresos v. White, 47 Ariz. 175, 54 P. 2d 800; First National Bank v. Jaffee, 239 Ala. 567, 196 So. 103; Alert B. & L. Ass'n v. Bechtold, 120 N.

J. L. 397, 199 Atl. 734; Shallcross v. North Branch, etc., Ass'n, 123 Pa. 593, 187 Atl. 819; and Federal Land Bank v. Garrison, 185 S. C. 255, 193 S. E. 308. In considering the correctness of the prior rule I think it is significant that the Appellate Court of New York was of the opinion, when the Gelfert Case was before it, that the New York act violated the Federal Constitution (there apparently is no such provision in the New York State Constitution). National City Bank v. Gelfert, 284 N. Y. 13, 29 N. E. 2d 449, 130 A. L. R. 1472.

The Supreme Court of the United States in its decision in the Gelfert Case disposed of the earlier decisions of that court, which were obviously contrary to the rule then being adopted, by saying:

"Those cases, however, have been confined to the special circumstances there involved . . . We cannot permit the broad language which those earlier decisions employed to force Legislatures to be blind to the lessons which another century has taught."

My reading of the cases thus evaded does not disclose any special circumstances of a more limited or precise nature than those involved herein, and consequently I cannot find in broad language generalities which say that the problems and conditions then confronted differed from those of this century.

The opinion apparently acts on the assumption that every mortgage involves a loan of money, without taking into consideration that in many instances it involves the consideration for the purchase price and many other considerations which the Legislature has not seen fit to distinguish among in the act under consideration.

The adoption by this court of the changed rule announced by the Federal Supreme Court entirely ignores our own State Constitution, which in this instance is as complete and efficacious protection for the constitutional rights of the parties as the Federal Constitution. The Supreme Court of Ohio, in Direct Plumbing Co. v. City of Dayton,

138 Ohio St. 540, 38 N. E. 2d 70, 137 A. L. R. 1058, in reaching the conclusion that a city ordinance offended the Bill of Rights of the Ohio Constitution, when it was clear from the decisions of the Supreme Court of the United States that such an ordinance did not offend the parallel provisions of the Federal Constitution, said that, while Ohio's Bill of Rights coincided with the Federal Bill of Rights, nevertheless, if the Ohio courts felt that those rights were not being safeguarded by the interpretation of the Federal Constitution. " . . . it is well to remember that Ohio is a sovereign state and that the fundamental guaranties of the Ohio Bill of Rights have undiminished vitality." I think that language is applicable to this situation and firmly believe that it was the intention of the people of Oklahoma, in adopting its own Bill of Rights, to exercise its independent sovereignty, as in this case it may do.

Because the act under consideration materially alters the contractual rights of the parties as they existed at the time they contracted, I think it is unconstitutional and ought to be so declared.

I am authorized to say that Justices OSBORN and WELCH concur in these views.